IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SOPHIA LEWIS, INDIVIDUALLY AND §<br>AS REPRESENTATIVE OF THE ESTATE §<br>OF SHAMOND LEWIS, DECEASED §<br>§<br>§<br>VS. §<br>§<br>DALLAS COUNTY; §<br>JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; §<br>JOHN DOE 4; AND JOHN DOE 5 § | CIVIL ACTION NO. 3:23-CV-00381-D |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, SOPHIA LEWIS, Individually and As Representative of the Estate of Shamond Lewis, who was a mentally ill person and is now Deceased, complaining of DALLAS COUNTY ("Dallas County"), JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, and JOHN DOE 5, and with this Second Amended Complaint alleges as follows:

### I.   NATURE AND PURPOSE OF THE ACTION

1.01   This is an action for monetary damages brought pursuant to 42 U.S.C. §§1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and the Texas wrongful death and survival statutes.

1.02   Prior to September 22, 2022, Decedent Shamond Lewis had been medically diagnosed with the mental illness schizophrenia.  Although he had this condition, he took prescribed medications, was physically healthy, lived alone and supported himself.  Moreover, he had previously been booked in the Dallas County Jail (Lew Sterrett facility) and they were aware of his mental health condition.

PLAINTIFF'S SECOND AMENDED COMPLAINT                                                                                                          Page 1

1.03    On September 22, 2022, Mr. Lewis was arrested by Dallas Police Department officers on an aggravated assault charge. At the scene of the arrest, a Dallas County Sheriff's deputy recommended that Mr. Lewis be taken to a mental health hospital. However, the Dallas police officers insisted on taking him to the Dallas County Jail.

1.04    On September 22, 2022, at the time Mr. Lewis was incarcerated in the Dallas County Jail, he was mentally ill. Plaintiff Sophia Lewis, who is Shamond Lewis's mother, asserts that Defendant Dallas County had a duty, but failed to implement policies, practices and procedures that respected Shamond Lewis's constitutional right to medical treatment for mental illness, and implemented and/or approved policies which deprived Mr. Lewis of necessary treatment and care for his mental illness that resulted in his death. As a pretrial detainee, Shamond Lewis had a constitutional right to medical care.

1.05    Plaintiff asserts that the individual Defendants, known to her at this time only as John Does 1-5, violated Shamond Lewis's constitutional right to be free from the use of unreasonable, unnecessary, and excessive force when they beat and physically abused him, and if any individual Defendant did not engage in the excessive force, that Defendant failed to intervene when their fellow detention officers were violating Shamond Lewis's constitutional rights. Due to the restrictions of an ongoing investigation in the prosecution of a crime, Plaintiff has been unable to obtain any information or documents relating to the identification of these officers.

1.06    Plaintiff files this suit pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks damages for the unconstitutional treatment of her son Shamond Lewis while he was incarcerated in the Dallas County Jail and the wrongful death of Shamond Lewis as a result of injuries he sustained in the

Dallas County Jail under the Texas wrongful death statute, and as representative of his Estate, damages under the Texas survival statute.

## II. JURISDICTION AND VENUE

2.01   This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

2.02   Venue is appropriate in the United States District Court, Northern District of Texas, Dallas Division, since Dallas County is located in such district and division and the events made the basis of this cause of action occurred in such district and division.

## III. PARTIES

3.01   **Plaintiff SOPHIA LEWIS** sues Individually and As Personal Representative of the Estate of Shamond Lewis, Deceased.  At all relevant times, Mr. Lewis was a citizen of the United States and a resident of Dallas County.  Prior to and at the time of his injuries and death, Mr. Lewis was a pretrial detainee in the custody of Dallas County.

3.02   **Defendant DALLAS COUNTY, TEXAS** is a county of the State of Texas. Dallas County funds and operates the Dallas County Jail.  Defendant Dallas County has been served with process.

3.03   **Defendants JOHN DOE 1 - 5** are Dallas County employees working at the Dallas County Jail (whom Plaintiff understands to be sheriff's deputies or detention services officers) in the Dallas County Sheriff's Department.  Each Defendant's acts or omissions complained of herein arises from his conduct while acting under color of law, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or Dallas County.  **Defendants John Doe 1 - 5** were legally responsible to follow and implement the policies of the Dallas County Sheriff's Department and the United States Constitution with

respect to all matters concerning the care and custody of inmates in the Dallas County Jail. **Defendants John Doe 1 - 5** were responsible for ensuring that the custody, safekeeping, medical needs, housing, and discharge of all inmates, including Shamond Lewis, were in compliance with federal and state law, department and agency policies, and rules, regulations and related standards of care, including the implementation of the policies, procedures, practices, and customs and the acts and omissions challenged by this suit. **Defendants John Doe 1 - 5** are sued in their individual capacities. At this time, the identities of these Defendants are known only to their employer, Defendant Dallas County.

## IV. FACTS

4.01   Shamond Lewis was a physically healthy 24-year-old male who suffered from paranoid schizophrenia. On or about September 22, 2022, he was arrested for aggravated assault at a bus stop near his home in Mesquite, Texas. Mr. Lewis got into a verbal altercation with another man at the bus stop. A Dallas County Sheriff's deputy allegedly witnessed Mr. Lewis hit the other man with his hand. Mr. Lewis did have a knife in his possession and he was detained.

4.02   Dallas Police officers were called and came to the scene. Because Mr. Lewis was near his home and people knew him, Mr. Lewis's mother, Plaintiff Sophia Lewis, was also called and came to the scene. When she arrived, she informed the deputy and the police officers that Mr. Lewis had schizophrenia and that he may not have taken his medication recently. Although the deputy wanted to have Mr. Lewis taken to a hospital that treats mentally ill patients, because the other man wanted to press charges, the police officers said they had to arrest Mr. Lewis and take him to the Dallas County Jail (Lew Sterrett).

4.03   At the scene, Mr. Lewis was calm and compliant. He was walking, talking and physically healthy. He was moved from the Sheriff's deputy's car to the Dallas Police officers' car without incident.

4.04   On September 22, 2022, at approximately 12:17 p.m., officers with the Dallas Police Department processed Mr. Lewis into the Dallas County Jail as a pretrial detainee without incident. Mr. Lewis was arrested for the offense of Aggravated Assault w/Deadly Weapon, F2258454. During the booking process, Mr. Lewis was placed on suicide precaution to be monitored in an intake holding single cell.

4.05   At the time of his book-in, and all relevant times after, Mr. Lewis was mentally ill, and his mental illness constituted a serious medical condition which required appropriate treatment and medication.

4.06   At the time of his book-in, and all relevant times after, Mr. Lewis's mental illness and his serious medical condition were known to Dallas County Jail personnel.

4.07   At the time of his book-in, pursuant to Dallas County policies, Dallas County Jail officials did not provide Mr. Lewis medication for his condition within the first 24 hours of his book-in.

4.08   On September 22, 2022, at approximately 11:34 p.m., jail detention officers transferred Mr. Lewis to the second floor Release Section to be processed into a housing unit. Mr. Lewis was placed in a single cell holding unit.

4.09   On Friday, September 23, 2022, at approximately 12:41 a.m., Mr. Lewis was escorted to the Changeout Room (which apparently is one of the few places in the jail without surveillance cameras) to change into jail attire. Mr. Lewis became irritated and allegedly refused. At the point of refusal, Dallas County Jail officials failed to realize that he was still

having a schizophrenic episode and did not call for a psychiatrist, psychologist, or counselor to speak with Mr. Lewis calmly and patiently and address his mental illness.

4.10   Instead, several detention officers (Defendants John Doe 1 - 5), over the course of 12 minutes out of the range of cameras, first placed Mr. Lewis in handcuffs, then physically beat and assaulted Mr. Lewis while forcibly changing his clothes and placing him in a six-point restraint chair.

4.11   On September 23, 2022, at approximately 12:53 a.m., Dallas County Jail officials claim that as they provided Mr. Lewis some water, his eyes rolled back and he immediately became unresponsive.  He was taken to the nurses' station for medical attention.  Fifty minutes later, at 1:43 a.m., Parkland Hospital was notified by EMS of Mr. Lewis's impending arrival.

4.12   Mr. Lewis arrived at Parkland Hospital on September 23, 2022 at 1:53 a.m. Upon admission to Parkland at 2:23 a.m., medical doctors noted that (1) his body showed signs of diffuse trauma, including to the head, (2) evidence of trauma, (3) abrasions of multiple sites, and (4) a reduced level of consciousness.

4.13   On September 23, 2022 at 11:29 a.m., the Parkland records note that Mr. Lewis likely suffered severe anoxic brain injury and had multi-system organ failure.  At 1:03 p.m., the Parkland records noted that Mr. Lewis was comatose with concerning neurological findings.

4.14   Six days later, on September 29, 2022 at 6:48 p.m., Shamond Lewis died; he was pronounced brain dead in Parkland Hospital.

4.15   The Custodial Death Report dated October 10, 2022 and amended Custodial Death Report dated January 12, 2023 (which contain autopsy findings) for Shamond Lewis both answer the question, "Where did the event causing the death occur?" with the address of the Lew Sterett Jail at 111 W. Commerce in Dallas.  In response to the question, "Was the deceased under

restraint in the time leading up to the death or the events causing the death?" both reports answer "Yes" with the specific device identified as "Restraint Chair."

4.16   Medical examiner Stephen M. Lenfest, M.D. performed an autopsy on Mr. Lewis as required for a custodial death.  His conclusions were as follows:  "Based on the available investigative information, medical record review, and autopsy findings, it is my opinion that the cause and manner of death of Shamond Titas Lewis, a 24-year-old male, remains undetermined. The decedent was in custody at a jail facility. There is video surveillance that shows the decedent walking, talking, and apparently without complaint for a time period that spans more than one hour.  The decedent is seen to walk into a changing room with law enforcement officers, there is video footage of the hallway outside of the changing room, but there is no video surveillance of the inside of the room. The available investigative information indicated that multiple law enforcement officer [sic] restrained the decedent in an effort to change his clothes, and during this incident he was placed in handcuffs.  The decedent was also placed in a restraint chair in the changing room.  When the decedent is brought out of the changing room, he can again be seen on the video surveillance. He appears to have acute mental status changes but appears to be breathing and moving for several minutes prior to becoming unresponsive.  Based on the video footage of the hallway, the incident inside the changing room appears to last approximately 12 minutes."

4.17   Dr. Lenfest continued, "The most notable findings based on the medical records and the autopsy are severe rhabdomyolysis and marked cerebral edema with brain herniation. The only injuries identified at the time of the autopsy are healing superficial injuries of the skin and superficial injuries of the musculature.  No antemortem blood samples from the time of hospital admission were available for additional toxicology testing.  It is difficult to determine to

what degree the physical restraint contributed to the development of these findings without being able to definitively rule out the possible toxicity of therapeutic medications and/or other drugs including synthetic compounds."

4.18   "Based on the lack of video surveillance showing the incident of physical restraint by multiple law enforcement officers, the video evidence of the decedent being responsive, although altered, following the incident, only superficial injuries seen at the autopsy, and the inability to perform comprehensive toxicology testing on samples from the time of the incident due to lack of specimen availability, it is my opinion that the cause and manner of death are best classified as undetermined."

## V.  CAUSE OF ACTION AGAINST DALLAS COUNTY – 42 U.S.C. §1983

5.01   All preceding paragraphs are incorporated here by reference.

5.02   At all times material to this Second Amended Complaint, Dallas County acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Dallas County.

5.03   Dallas County has a non-delegable duty under Texas law and the U.S. Constitution to provide medical care—including mental health care—to inmates at its Jail.  For several years, medical/mental health care at the Dallas County Jail has been provided by Dallas County through Parkland Health and Hospital System Correctional Health Services ("Parkland").

5.04   Sheriff Marian Brown is the appropriate policymaker for the Dallas County Jail.

5.05   Acting under color of law, Defendant Dallas County deprived Shamond Lewis of the rights and privileges secured to him by the Fourth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical/mental health treatment.

5.06   The constitutionally inadequate system of medical care – the conditions at the Dallas County Jail – caused Shamond Lewis to suffer a deprivation of his constitutional rights. These conditions of Shamond Lewis's confinement as set forth in this Second Amended Complaint were not reasonably related to a legitimate governmental purpose. These conditions amounted to punishment before he was judged guilty and thus violated due process of law. Dallas County's intent to punish Shamond Lewis may be inferred from its decision to expose pretrial detainees such as Mr. Lewis to an unconstitutional condition. In other words, an official intent to punish may be inferred from general conditions, practices, rules, or restrictions of pretrial confinement.

5.07   Dallas County is liable under 42 U.S.C. § 1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical/mental health care at its Jail.

5.08   The challenged conditions set forth in this Second Amended Complaint violated Shamond Lewis's constitutional rights and were the foreseeable product of Dallas County's decision to provide insufficient medical/mental health care at the Jail.

5.09   Dallas County has failed to provide appropriate mental health and medical services to mentally ill prisoners in the Dallas County Jail. The jail, and those responsible for mental health and medical services at the jail, failed to ensure that pretrial detainees suffering from mental illness like Shamond Lewis were promptly and properly evaluated and treated.

5.10   Dallas County failed to ensure that when inmates with mental illness, like Shamond Lewis, are booked into the Dallas County Jail, they are evaluated and periodically re-evaluated, so that their mental health and any changes in their medical or mental health condition can be addressed.

5.11   Dallas County did not sufficiently train and/or supervise its staff at the Jail, including non-medical detention officers, to ensure that they were able to recognize and appropriately respond to mentally ill pretrial detainees like Shamond Lewis. Dallas County knew that Mr. Lewis was schizophrenic; he had been confined in the Dallas County Jail before the confinement that proved fatal in September 2022.  And, his mother Plaintiff Sophia Lewis expressly informed the Dallas County Sheriff's deputy and Dallas police officers who placed Mr. Lewis under arrest that he was schizophrenic and may not have been taking his medication.

5.12   Dallas County appeared to respond appropriately to Mr. Lewis's mental illness at first during the initial booking process, if he was placed on suicide precaution to be monitored in an intake holding single cell as has been related to Plaintiff.

5.13   However, that was the last time that Dallas County Jail officials provided any acknowledgement of or appropriate response to Mr. Lewis's mental illness.  Dallas County Jail officials did not provide Mr. Lewis medication for his condition within the first 24 hours of his book-in.

5.14   Even though Shamond Lewis was already in the Dallas County Jail system records as having mental illness, and even though Dallas County officials were expressly told at the time of his arrest on September 22, 2022 that Mr. Lewis had a history of mental illness, when he presented signs of his mental illness on September 23, 2022 – when he became irritated when he was asked to change into jail attire – Dallas County ignored those signs, and failed to provide appropriate mental health and medical care.  Instead of calling in a mental health expert to counsel with Mr. Lewis, he was physically restrained by several staff members and physically beaten and abused.

5.15   Then, five Dallas County detention officers failed to or refused to appropriately respond to his mental illness when Mr. Lewis—still in a schizophrenic episode—balked at changing into jail attire.  They did not call for a psychiatrist, psychologist, or counselor to speak with Mr. Lewis calmly and patiently and address his mental illness.  Instead, they put handcuffs on him, beat and assaulted him, and put him in a restraint chair, all outside the view of the Jail surveillance cameras.

5.16   Dallas County implemented policies that resulted in the unconstitutional medical/mental health care at the Dallas County Jail, including:

   a.   the failure to staff the jail facility with appropriate numbers of properly trained mental-health professionals;

   b.   the failure to monitor the confinement of inmates who were mentally ill to ensure that all mentally ill inmates were receiving mental health treatment, medical services, and medication;

   c.   the failure to adequately and effectively train custodial staff with regard to mentally ill inmates, and the rights of mentally ill inmate to receive mental health treatment, medical services, and medication;

   d.   the failure to adopt and enforce standard operating procedures which governed determining and accessing whether an inmate has a documented mental health illness and which must be documented in the Dallas County Jail intake system so that such individual can be treated appropriately for such illness.

5.17   These unconstitutional conditions of his confinement directly led to Mr. Lewis's death seven days after he booked into the Dallas County Jail.

**VI.  CAUSES OF ACTION AGAINST JOHN DOE DEFENDANTS – 42 U.S.C. §1983**

6.01     All preceding paragraphs are incorporated here by reference.

6.02     At all times material to this Second Amended Complaint, Defendants John Doe 1-5 acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Dallas County.

6.03     Plaintiff asserts her claims against Defendants John Doe 1-5 in their individual capacities.

6.04     Plaintiff has not yet been able to ascertain the identities of Defendants John Doe 1-5, as that information is wholly within the knowledge of their employer, Dallas County.  Their identities will not be burdensome for Dallas County to disclose; Plaintiff understands that they are Jail detention officers who would have been working a shift at the Jail on Friday, September 23, 2022, at approximately 12:41 a.m. when Shamond Lewis was beaten and assaulted. Moreover, the identities of Defendants John Doe 1-5 were apparently captured on surveillance cameras in a hallway as they escorted Mr. Lewis into the changeout room at 12:41 a.m. and out again twelve minutes later at approximately 12:53 a.m.

6.05     Plaintiffs assert claims for excessive force and bystander liability against Defendants John Doe 1-5 for their constitutional violations of Shamond Lewis's rights.  Plaintiff understands from information in the Custodial Death report on her son that although there were surveillance cameras in the hallway, once these Defendants escorted Mr. Lewis into the changeout room and closed the door, there were no surveillance cameras in that room to record their misconduct.  Plaintiff's understanding is also that none of these Defendants were wearing body cameras, so that avenue of proving what occurred in that room is likewise foreclosed to her. Plaintiff's only chance of ever discovering the truth of who assaulted and beat Mr. Lewis is to depose these Defendants.  In any event, Plaintiff asserts that each of these Defendants either

personally engaged in assaulting and beating Mr. Lewis, or had the opportunity to intervene to stop the assault by the other detention officers but chose not to do so.

6.06 Twelve minutes would have seemed like an eternity to Mr. Lewis as he was suffering physical violence from these Defendants. It is possible that discovery may reveal that a John Doe Defendant either personally engaged in the excessive force; or did not personally engage in the excessive force but stood by and chose not to intervene to prevent the other Doe Defendants from engaging in excessive force; or did both of those things at different times during those twelve minutes.

### A. CLAIM FOR EXCESSIVE FORCE

6.07 Plaintiff pleads a claim for excessive force against Defendants John Doe 1-5. Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force was objectively unreasonable. To prevail on her excessive force claim, Plaintiff must show that Mr. Lewis sustained: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was clearly unreasonable."

6.08 Mr. Lewis sustained visible, severe injuries from the assault and beating by Defendants John Doe 1-5 according to the Custodial Death Report and the Parkland records. The sequence of events apparently was that Defendants John Doe 1 - 5 handcuffed Mr. Lewis, then forcibly changed his clothes, then placed him in a restraint chair. Even if Mr. Lewis engaged in some level of resistance to changing his clothes, an officer's use of force is objectively unreasonable if its severity is disproportionate to the level of resistance offered by the detainee. The severity of Mr. Lewis's injuries supports that objectively unreasonable, disproportionate force is exactly what occurred. The use of force on Mr. Lewis after he was handcuffed would have been clearly excessive, especially considering that five detention officers assaulted one

person. Mr. Lewis never posed an immediate threat to the safety of Defendants John Doe 1 - 5. Mr. Lewis was not armed with any kind of weapon. Within the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable.

### B. CLAIM FOR BYSTANDER LIABILITY

6.09   Plaintiff asserts a claim for bystander liability against any of the Defendants John Doe 1-5 who was not personally actively engaging in the use of excessive force against Shamond Lewis at any point during the assault and beating, but failed to intervene to protect Mr. Lewis or prevent the other Doe Defendants' excessive force against Mr. Lewis.

6.10   An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.

6.11   The assault and beating of Mr. Lewis was a violation of his constitutional rights, especially because he was restrained and no threat to anyone. Defendants John Doe 1-5—five detention officers—surrounded Mr. Lewis in the changeout room. To place handcuffs on Mr. Lewis, change his clothes, and place him in a restraint chair necessarily meant that Defendants John Doe 1-5 had their hands on Mr. Lewis or were inches away from him during those twelve minutes out of camera view. Each of these Defendants had time to intervene during the lengthy assault and beating of Mr. Lewis, and the physical proximity to intervene if he had chosen to do so. Even if a Doe Defendant did not engage personally in any of the excessive force, the injuries to Mr. Lewis were preventable and the failures to act of any of those Doe Defendants contributed to the outcome.

## VII. DAMAGES

7.01    All preceding paragraphs are incorporated here by reference.

7.02    As a direct and proximate result of the above-described acts and omissions of the Defendants, Plaintiff, and the interests that Plaintiff legally represents, have suffered serious damages.  Plaintiff seeks damages under the Texas wrongful death statute.  Plaintiff additionally seeks damages as the representative of Shamond Lewis's estate under the Texas survival statute.  Plaintiff also seeks the same damages under any applicable federal law.

7.03    Pursuant to the terms of Tex. Civ. Prac & Rem. Code §71.021, *et seq.*, Shamond Lewis's right of recovery for personal injuries, pain and suffering, mental anguish, medical expenses, and other damages he could recover in his own right were he alive survives to the benefit of his heirs and Estate.

7.04    Accordingly, Plaintiff seeks to recover all actual, compensatory, and punitive/exemplary damages which are a direct and proximate result of Defendants' violations of Shamond Lewis's constitutional rights.  These damages include, but are not necessarily limited to, the following:

a) Shamond Lewis's physical suffering;

b) Shamond Lewis's mental pain and anguish;

c) Shamond Lewis's disfigurement;

d) Shamond Lewis's medical expenses;

e) All reasonable and necessary burial expenses associated with Shamond Lewis's death;

f) Plaintiff's mental pain and anguish arising from the death of her son Shamond Lewis, both past and future;

g) Plaintiff's damages arising from the loss of companionship and society of her son Shamond Lewis, both past and future;

h) Plaintiff's damages arising from the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that she would have received if Shamond Lewis had lived, both past and future; and

i) Punitive and/or exemplary damages (only against Defendants John Doe 1-5).

## VIII. JURY DEMAND

8.01   Plaintiff respectfully demands a trial by jury.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendants be cited to appear and answer herein and that, upon final hearing, Plaintiff have the following relief:

a.   Recovery of damages consistent with this Second Amended Complaint.

b.   Recovery of costs herein expended.

c.   Reasonable and necessary attorney's fees.

d.   Prejudgment interest and post judgment interest as permitted by law.

e.   Such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

CLARK │ VON PLONSKI │ ANDERSON

By: *Collen A. Clark*
**COLLEN A. CLARK**
State Bar No. 04309100
**JACOB L. von PLONSKI**
State Bar No. 24098554
**R. CONNOR BARBE**
State Bar No. 24108598
**LINDA LE**
State Bar No. 24126312
3500 Maple Avenue, Suite 1250

        Dallas, Texas 75219
        214-780-0500
        214-780-0501 Facsimile
        Eservice – eservice@cvpalaw.com

        *In association with:*

        **THE PIPKIN LAW FIRM**

        **STEPHEN C. PIPKIN**
        State Bar No. 00784766
        3500 Maple Avenue, Suite 1250
        Dallas, Texas 75219
        Telephone: 214-780-0512
        Facsimile: 866-789-6956
        Email – steve@pipkinlawfirm.com
        ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

       This will certify that a true and correct copy of the foregoing instrument has been served on all attorneys of record in this cause of action in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on the 4th day of April, 2023.

Jason G. Schuette
Assistant District Attorney Texas
Joseph W. Spence
Assistant District Attorney Texas
Dallas County District Attorney's Office
Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202

        */s/ Collen A. Clark*
        **COLLEN A. CLARK**