**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SOPHIA LEWIS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF SHAMOND LEWIS, DECEASED** | § § § § § | |
| **VS.** | § § | **CIVIL ACTION NO. 3:23-CV-00381-D** |
| **DALLAS COUNTY; SERGEANT CHRISTOPHER LOBODA; OFFICER JAMES MCDANIEL; OFFICER JAVIER TAVERA-LUNA; OFFICER ROCHELLE ROEMEN; OFFICER ANNETTE GRANT; and OFFICER FUQUAN CHILDRESS** | § § § § § § § | |

---

**PLAINTIFF'S BRIEF CONCERNING DEFENDANTS' OBJECTION TO PROVIDING RULE 26(a)(1) DISCLOSURES**

---

TO THE HONORABLE COURT:

COMES NOW, SOPHIA LEWIS, Individually and As Representative of the Estate of Shamond Lewis, Deceased, and files her Plaintiffs' Brief Concerning Defendants' Objection to Providing Rule 26(a)(1) Disclosures, and would respectfully show the Court the following:

## I. BACKGROUND

Plaintiff filed this suit pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks damages for the violations of the constitutional rights of her son Shamond Lewis while he was incarcerated as a pretrial detainee in the Dallas County Jail, and the wrongful death of Shamond Lewis as a result of injuries he sustained in the Dallas County Jail under the Texas wrongful death statute, and as representative of his Estate, damages under the Texas survival statute.

On January 23, 2024, Plaintiff filed her Fifth Amended Complaint (doc. #32). Plaintiff added as defendants the Dallas County Hospital District d/b/a Parkland Health ("Parkland") and several Dallas County employees who were medical providers at the Dallas County Jail when Shamond Lewis was incarcerated there. On May 24, 2024, four of the medical providers—Adaria Johnson, LVN, Kelechi Nwazue, RN, Carmen Davis, RN, and Yewande Wilson, NP—filed an Answer (doc. #58). A few days later on June 4, 2024, these defendants filed an Advisory to the Court and Counsel stating that they object to making their Rule 26(a) Initial Disclosures pending a resolution of their entitlement to qualified immunity (doc. #62). Judge Fitzwater has referred the matter to this Court for "determination of defendants' objection to making Rule 26(a)(1) disclosures, the determination of what disclosures—if any—are to be made, and the determination of a time for disclosure" (doc. #63). Plaintiff has been granted leave to file this brief in response to the defendants' objection (doc. #64).

## II. PLAINTIFF'S BRIEF

The Court has directed Plaintiff to address the issues referred to by Judge Fitzwater and to explain why this case differs from *Horace v. Lyles*, Case 3:23-CV-1424-D-BN. In *Horace v. Lyles*, the Court issued a Memorandum Opinion and Order on October 5, 2023 (*Horace* doc. #21), reported at 2023 WL 6519750, in which the Court sustained the defendants' objection to making the Rule 26(a)(1) initial disclosures until their entitlement to qualified immunity was resolved. Plaintiff also invokes Judge Fitzwater's Memorandum Opinion and Order filed on November 1, 2023 (*Horace* doc. #23), in which Judge Fitzwater ordered that discovery was stayed in the case "except as it bears upon the defense of qualified immunity." *Horace v. Lyles*, reported at 2023 WL 7190675, at *3.

Although there are significant differences in the facts in *Horace v. Lyles* compared to this case, Plaintiff considers the cases to be similarly situated with respect to the discovery issues discussed in the respective Memorandum Opinion and Orders by this Court and by Judge Fitzwater in *Horace v. Lyles*.

Plaintiff does not object to these defendants being permitted to defer making their Rule 26(a)(1) initial disclosures until their entitlement to qualified immunity is resolved, as the Court ordered in *Horace v. Lyles*. In this case, the defendants have not sought to stay all discovery, as the defendants in *Horace v. Lyles* did. Even if these defendants had sought such a stay, however, Plaintiff should be permitted to conduct limited discovery on the issue of the defendants' entitlement to qualified immunity in this case, for the same reasons the plaintiffs were permitted to do so in *Horace v. Lyles*. *Horace v. Lyles*, 2023 WL 7190675, at *3.

In Plaintiff's Fifth Amended Complaint ("FAC"), Plaintiff recounts the circumstances of her son Shamond Lewis's arrest and detention, including that jail officers "over the course of 12 minutes out of the range of cameras, first placed Mr. Lewis in handcuffs, then physically beat, stood on him, and assaulted Mr. Lewis while forcibly changing his clothes prior to placing him in a six-point restraint chair." (FAC at ¶ 4.10) Then,

> Dallas County Jail officials claim that as they provided Mr. Lewis some water, his eyes rolled back, and he immediately became unresponsive and was not breathing well – creating an emergency situation. According to the officer's records, the officers waited and allowed Mr. Lewis to be in this medical situation for seven (7) minutes. It wasn't until 1:00 a.m. that Mr. Lewis was taken to the MAP'S nurses' station. When Officer Loboda attempted to give Mr. Lewis some water, he noticed Mr. Lewis' breathing was worse and his eyes had rolled back in his head. Officer Loboda called for a nurse, and it took the nurse five minutes to arrive. The Officers realized that Mr. Lewis was not breathing and needed emergency care and they needed to shock his heart. Officer Tavera had to call twice for an automatic external defibrillator before it was brought to Mr. Lewis. According to Officer Tavera, "the medical staff was not prepared to assist the inmate." Fifty minutes later, at 1:43 a.m., Parkland Hospital was notified by EMS of Mr. Lewis's impending arrival.

(FAC at ¶ 4.11) Another record reflects that the officers "had to call the nurse three times to come and check the inmate" and that jail staff had to help with CPR after the defibrillator was eventually located. (*Id.*) When Mr. Lewis was transported to Parkland a few minutes later, he was unresponsive and in critical condition. (FAC at ¶ 4.12) A few hours later he was comatose; six days later, Mr. Lewis was pronounced brain dead and died. (FAC at ¶ 4.15 - 4.16)

Based on Dallas County Jail documents, jail officers had to repeatedly request that a nurse attend Mr. Lewis, who was in an emergency situation, but "the medical staff was not prepared to assist the inmate." Who was Officer Tavera referring to, and what precisely did he mean? The medical records that the defendants tout provide no answers to these crucial questions. The defendants did not file a Motion to Dismiss in light of these allegations; instead they filed an Answer.[1] In response to Officer Taveras's claim, the defendants deny that the medical staff were unprepared to assist Mr. Lewis when told that he had stopped breathing, and deny that Officer Tavera is qualified to render a nursing/medical opinion whether or not nursing and medical provider staff acted appropriately. (Answer, doc. #58 at ¶ 4.11)

Decades ago, the U.S. Supreme Court and Fifth Circuit determined that the responsibility and duty owed to an incarcerated person includes a constitutional right to medical care. The State owes a duty to pretrial detainees and convicted prisoners that effectively confers upon them a set of constitutional rights that fall under the Supreme Court's rubric of "basic human needs," which include food, clothing, shelter, medical care, and reasonable safety. *Hare v. City of Corinth*, 74

---

[1] In this Court's memorandum opinion in *Horace v. Lyles*, the Court noted,

> But, where a defendant asserts qualified immunity – and the Court is not currently considering a motion to dismiss the complaint (or or any portion of it) on that basis – the Court may, under certain circumstances, permit limited discovery that is narrowly tailored to uncover only facts that the Court needs to rule on the defendant's entitlement to qualified immunity.

*Horace v. Lyles*, 2023 WL 6519750, at *2 (citations omitted).

F.3d 633, 639 (5th Cir. 1996) (en banc). Plaintiff has properly pleaded that these defendant medical providers violated Mr. Lewis's constitutional rights by acting with deliberate indifference to Mr. Lewis's serious medical needs. (FAC at ¶ 6.02) The Fifth Circuit has defined a serious medical need as one which is "so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Laymen certainly can recognize that a person who stops breathing has a serious medical need.

Specifically, Plaintiff asserts that these defendants' failures include:

a. Failure to take reasonable or appropriate precautions to prevent Mr. Lewis' death;

b. Failure to provide appropriate medical evaluation and/or treatment to Mr. Lewis to address his known, obvious medical condition(s); and,

c. Refusing to treat Mr. Lewis, ignoring his complaints, intentionally treating him incorrectly, or engaging in similar conduct that would evidence a wanton disregard for serious medical needs.

(FAC ¶ 6.04)

Plaintiff will seek discovery from these defendants only that is necessary to address their defense of qualified immunity, exactly as Judge Fitzwater granted the plaintiffs in *Horace v. Lyles*, 2023 WL 7190675, at *3. Plaintiff acknowledges that the scope of this discovery likely is more narrow than the scope of initial disclosures as set forth in Rule 26(a)(1), Fed. R. Civ. P. For that reason, Plaintiff does not object to these defendants being permitted to defer making their initial disclosures until the issue of qualified immunity is determined. In the event that this discovery reveals that one or more of the defendants did not participate in the challenged acts or omissions, Plaintiff will expeditiously seek leave to dismiss that defendant as she has no interest whatsoever in continuing to pursue a defendant who played no part in the harm to Shamond Lewis.

Respectfully submitted,

**CLARK | VON PLONSKI | ANDERSON**

By: *Collen A. Clark*
**COLLEN A. CLARK**
State Bar No. 04309100
**JACOB L. von PLONSKI**
State Bar No. 24098554
**R. CONNOR BARBE**
State Bar No. 24108598
**LINDA LE**
State Bar No. 24126312
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214-780-0500
214-780-0501 Facsimile
Eservice – eservice@cvpalaw.com

*In association with:*

**THE PIPKIN LAW FIRM**

**STEPHEN C. PIPKIN**
State Bar No. 00784766
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
Telephone: 214-780-0512
Facsimile: 866-789-6956
Email – steve@pipkinlawfirm.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

This will certify that the foregoing document has been served upon the following counsel of record by electronic service via the Court's CM/ECF system in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on the 13th day of June 2024.

JOHN CREUZOT CRIMINAL DISTRICT ATTORNEY DALLAS COUNTY, TEXAS
Joseph W. Spence, Assistant District Attorney
Jason G. Schuette, Assistant District Attorney
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202

**ATTORNEYS FOR DEFENDANTS DALLAS COUNTY, CHRISTOPHER LOBODA, JAMES MCDANIEL, JAVIER TAVERA-LUNA, ROCHELLE ROEMEN, AND FUQUAN CHILDRESS**

Edwin P Voss , Jr.
Brown & Hofmeister
740 E Campbell Rd., Suite 800
Richardson, Texas 75081

**ATTORNEY FOR DEFENDANT ANNETTE GRANT**

Winston L Borum
Watson Caraway Midkiff & Luningham LLP
306 W 7th Street, Suite 200
Fort Worth, TX 76102

**ATTORNEY FOR DEFENDANTS ADARIA JOHNSON, LVN, KELECHI NWAZUE, RN, CARMEN DAVIS, RN, AND YEWANDE WILSON, NP**

*/s/ Collen A. Clark*
**COLLEN A. CLARK**