UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOPHIA LEWIS, Individually and as Representative of the Estate of Shamond Lewis, Deceased, Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0381-D |
| DALLAS COUNTY, et al., Defendants. | § | |

**BRIEF IN SUPPORT OF DEFENDANT GRANT'S MOTION FOR SUMMARY JUDGMENT ASSERTING QUALIFIED IMMUNITY**

Edwin P. Voss, Jr.
State Bar No. 20620300
evoss@bhlaw.net
BROWN & HOFMEISTER, L.L.P.
740 E. Campbell Road
Suite 800
Richardson, Texas 75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

ATTORNEY FOR DEFENDANT

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

I. FACTS ........ 1

II. ARGUMENT AND AUTHORITIES ........ 1

A. Legal Standard Applicable to Motions for Summary Judgment in Qualified Immunity Cases ........ 1

B. Qualified Immunity Legal Standards ........ 3

C. Defendant is Entitled to Qualified Immunity as to Plaintiff's Excessive Force Claim under the Fourteenth Amendment ........ 7

1. Applicable Legal Principles ........ 7

2. Application of Legal Principles Leads to Finding of No Constitutional Harm ........ 9

3. *Res Ipsa Loquitur* is Inapplicable ........ 13

4. The Pleadings and Evidence Do Not Establish Constitutional Harm ........ 14

5. No Violation of Clearly Established Law ........ 15

D. Defendant is Entitled to Qualified Immunity as to Plaintiff's Bystander Liability Claim ........ 16

III. CONCLUSION AND PRAYER ........ 18

CERTIFICATE OF SERVICE ........ 19

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Creighton,* 483 U.S. 635 (1987) .......... 4, 6, 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 2, 3

*Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245 (5th Cir. 2005) .......... 9, 17

*Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629 (5th Cir. 2000) .......... 2

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) .......... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 2, 3

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009) .......... 2

*Collier v. Montgomery*, 569 F.3d 214 (5th Cir. 2009) .......... 5, 6, 11

*Cornish v. Corr. Sers. Corp.*, 402 F.3d 545 (5th Cir. 2005) .......... 4

*Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273 (5th Cir. 2002) .......... 7

*Daniels v. Williams*, 474 U.S. 327 (1986) .......... 13

*Davidson v. Cannon*, 474 U.S. 344 (1986) .......... 13

*Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137 (5th Cir.1992) .......... 13-14

*Edwards v. Loggins*, 476 Fed.Appx. 325 (5th Cir. 2012) .......... 8

*Elliot v. Linnell*, 269 Fed.Appx. 450 (5th Cir. 2008) .......... 16

*Fairchild v. Coryell County, Texas*, 40 F.4th 359 (5th Cir. 2022) .......... 9, 10, 11, 17

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) .......... 4

*Gast v. Singleton*, 402 F.Supp.2d 794 (S.D. Tex. 2005) .......... 13

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404 (5th Cir. 2008) .......... 2, 3

*Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999) .......... 9, 11

*Green v. Revel*, 2010 WL 597827 (N.D. Tex., No. 2:09-CV-0147, Feb. 19, 2010) .......... 13

*Haddock v. Arnspiger*, 793 S.W.2d 948 (Tex. 1990) .......... 13

*Hale v. Townley,* 45 F.3d 914 (5th Cir. 1995) .......... 16

*Hare v. City of Corinth, Mississippi*, 74 F.3d 633 (5th Cir. 1996) (en banc) .......... 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .......... 4

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) .......... 2

*Hopkins v. Stice*, 916 F.2d 1029 (5th Cir. 1990) .......... 5

*Hudson v. McMillian*, 503 U.S. 1 (1992) .......... 8, 9, 11, 12, 15

*Hunter v. Bryant*, 501 U.S. 224 (1991) .......... 4

*Hutcheson v. Dallas Cnty, Tex.*, 994 F.3d 477 (5th Cir. 2021) .......... 10, 11, 17

*Khan v. Normand*, 683 F.3d 192 (5th Cir. 2012) .......... 5

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) .......... 8, 9, 10, 11, 15, 17

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc) (per curiam) .......... 2

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) .......... 3

*Malley v. Briggs*, 475 U.S. 335 (1986) .......... 6

*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc) (per curiam) .......... 2, 6

*Meadours v. Ermel*, 483 F.3d 417 (5th Cir. 2007) .......... 9, 17

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .......... 4

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc) .......... 5, 6

*Pearson v. BP Products of North America, Inc.*, 449 Fed.App'x 389 (5th Cir. 2011) .......... 13

*Pearson v. Callahan*, 555 U.S. 223 (2009) .......... 5, 6, 15, 18

*Pfannsteil v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990) .......... 5

*RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851 (5th Cir. 2010) .......... 2

*Salas v. Carpenter*, 980 F.2d 299 (5th Cir. 1992) .......... 7

*Saucier v. Katz*, 533 U.S. 194 (2001) .......... 5, 15, 18

*Sorenson v. Ferrie*, 134 F.2d 325 (5th Cir. 1998) .......... 5

*Thompson v. Upshur Cnty.*, 245 F.3d 447 (5th Cir. 2001) .......... 7

*Tolan v. Cotton*, 572 U.S. 650 (2014) .......... 1-2

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992) .......... 2

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir. 2007 ) .......... 2

*United States v. Daniels*, 281 F.3d 168 (5th Cir. 2002) ........ 8, 9, 12, 15

*Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993) ........ 8, 9, 12, 15

*Wallace v. Cnty. of Comal*, 400 F.3d 284 (5th Cir. 2005) ........ 7

*White v. Taylor*, 959 F.2d 539 (5th Cir. 1992) ........ 4

*Whitley v. Albers*, 475 U.S. 312 (1986) ........ 8, 16

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ........ 16

*Zarnow v. City of Wichita Falls*, 500 F.3d 401 (5th Cir. 2007) ........ 3

**STATUTES**

42 U.S.C. § 1983 ........ 3 , 13

Fed.R.Civ.P. 5 ........ 19

FED.R.CIV.P. 56 ........ 1

Fed.R.Evid. 801-803 ........ 10

**BRIEF IN SUPPORT OF DEFENDANT GRANT'S MOTION FOR SUMMARY JUDGMENT ASSERTING QUALIFIED IMMUNITY**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Annette Grant ("Defendant" or "Grant") files the following Brief in Support of Defendant Grant's Motion for Summary Judgment Asserting Qualified Immunity ("Brief"), pursuant to FED.R.CIV.P. 56 and the court's local rules, and respectfully moves the court to grant summary judgment in her favor as to the claims asserted against Defendant in this case by Plaintiff Sophia Lewis ("Plaintiff" or "Ms. Lewis"), based upon Defendant's qualified immunity defense. There is no genuine issue as to any material fact, and Defendant is entitled to summary judgment as a matter of law because of Defendant's qualified immunity. In support of this motion, Defendant respectfully shows the court the following:

## I. FACTS

Defendant incorporates by reference as if repeated herein verbatim the undisputed facts set forth in Defendant Grant's Motion for Summary Judgment Asserting Qualified Immunity ("Defendant's Motion"), pp. 3-6, and the facts presented in the documents included in the Appendix in Support of Defendant Grant's Motion for Summary Judgment Asserting Qualified Immunity ("Defendant's Appendix" or "Appx."), filed concurrently with this Brief, as referenced herein.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Standard Applicable to Motions for Summary Judgment in Qualified Immunity Cases

Summary judgment is appropriate when the pleadings, discovery on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2); *Tolan v. Cotton*,

572 U.S. 650, 656-57 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*

Typically, a party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Governmental employees asserting qualified immunity have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. *See also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Although courts view the evidence in a light most favorable to the non-movant (*Anderson*, 477 U.S. at 255), "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, 'or only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007 ) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). The non-movant must show that the evidence is

sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to her case and on which she will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

As set forth herein, Defendant has carried her burden by asserting her qualified immunity defense in good faith. *See* Appx. pp. 043-045. *Gates*, 537 F.3d at 419. Further, even though Defendant has no burden to provide evidence, Defendant has included her affidavit describing her actions with Mr. Lewis on September 23, 2022, and other evidence. *See* Appx. pp. 001-004; 048-049. The burden is now upon Plaintiff to identify evidence in the record that creates a genuine issue of material fact regarding whether Defendant violated Mr. Lewis' constitutional rights, and whether the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007). Defendant asserts that Plaintiff cannot carry that burden, and that summary judgment should be granted to Defendant based upon her qualified immunity.

**B. Qualified Immunity Legal Standards**

Plaintiff has brought suit against Defendant under 42 U.S.C. § 1983 asserting claims of unlawful excessive force under the Fourteenth Amendment, and bystander liability. Appx. pp. 025-028. Defendant understands that § 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). In other words, § 1983 "afford[s] redress for violation of federal statutes, as well as of constitutional norms." *Id*. To state a claim under § 1983, a plaintiff must allege facts that show: (1) he has been deprived of a right secured by the Constitution and the laws of the United States,

and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Sers. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Defendant has asserted that she is entitled to qualified immunity in response to Plaintiff's claims. Appx. pp. 043-045. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A public official sued in her individual capacity is entitled to the defense of qualified immunity if she can establish that her conduct was lawful in light of clearly established law and the information possessed by her at the time. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). In *Harlow v. Fitzgerald*, the United States Supreme Court adopted the "objective reasonableness" test for determining whether a public official is entitled to qualified immunity. *Harlow*, 457 U.S. at 818.

The Supreme Court reaffirmed this holding in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), wherein it held that denials of immunity are interlocutorily appealable in order to shield government officials from the costs and risks of trial. *Mitchell*, 472 U.S. at 526. The United States Supreme Court and the Fifth Circuit have held that immunity questions should be resolved at the earliest possible stage of the litigation. *See Mitchell*, 472 U.S. at 526; *Harlow*, 457 U.S. at 818. *See also Hunter v. Bryant*, 501 U.S. 224, 227-228 (1991). Defendant's Motion is filed pursuant to the representation made in her answer and in her responses to initial disclosure requirements that specifically take into account these principles for an early determination of Defendant's assertion of qualified immunity. *See* Appx. pp. 043-045; 050-053.

The Supreme Court has modified the analytical process to make it more flexible for district courts to determine qualified immunity issues. *See Pearson v. Callahan*, 555 U.S. 223, 231-32, 236-43 (2009) (modifying the Court's analytical procedure set forth in *Saucier v. Katz*, 533 U.S. 194 (2001)). The inquiry a court must undertake in a qualified immunity analysis is to determine: (1) whether plaintiff's allegations, if true, establish a constitutional violation; and (2) whether the right was clearly established at the time of the events in question. *Pearson*, 555 U.S. at 231-32; *Saucier*, 533 U.S. at 201. *See also Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc); *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009); *Sorenson v. Ferrie*, 134 F.2d 325, 328 (5th Cir. 1998). A plaintiff must show that no reasonable official standing in the shoes of the defendant in question could have believed the alleged conduct was lawful. *Pearson*, 555 U.S. at 244. Whether a defendant's alleged conduct violated "clearly established" constitutional rights is a question of law. *Pfannsteil v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

Even if the complaint sufficiently pleads the violation of a clearly established federal or constitutional right, the court must nonetheless determine if a reasonable public official could have decided that the alleged conduct was lawful, because a public official is nonetheless entitled to qualified immunity if a "reasonable official would be left uncertain of the application of the standard to the facts confronting him." *Hopkins v. Stice*, 916 F.2d 1029, 1031 (5th Cir. 1990). In this case, the viability of Plaintiff's excessive force claim under the Fourteenth Amendment, and of Plaintiff's bystander liability claim, turns on the issue whether Defendant is entitled to qualified immunity based upon the undisputed, and undisputable, facts.

"Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Since the qualified immunity doctrine is designed to protect "all but the plainly incompetent or those who knowingly violate the law" (*Malley v. Briggs,* 475 U.S. 335, 341 (1986)), courts do not deny its protection unless existing precedent places the constitutional question "beyond debate." *Morgan*, 659 F.3d at 371. To reiterate from above, since Defendant has pleaded the defense of qualified immunity, Plaintiff, therefore, bears the burden to establish that Defendant is ***not*** entitled to qualified immunity. *See, e.g., McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.").

The relevant question is whether a reasonable public official such as Defendant could have believed that her conduct was lawful in light of clearly established law and the information possessed by her. *Creighton*, 483 U.S. at 641. Thus, an official's mistaken belief may be as to the applicable law, or the mistaken belief may be as to the facts, on which she acted. *See Pearson*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.") (internal quotation omitted).

To reiterate, once the defense of qualified immunity is raised, the plaintiff has the burden to establish facts that overcome the defense. *Collier*, 569 F.3d at 217. The plaintiff must show that: (1) the defendant's conduct violated a constitutional right, and (2) the defendant's conduct was objectively unreasonable in light of clearly established law as it existed at the time of the conduct in question. *Id*. Only after a plaintiff demonstrates the existence and violation of a clearly established constitutional or statutory right is the defendant required to show that she was performing a discretionary function and that a reasonable official would not have considered her

actions to be unconstitutional at the time of the incident in question. *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson*, 483 U.S. at 639). " 'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

Whether an official's conduct was objectively reasonable is a question of law for the court and not a matter of fact for the jury. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Courts may exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.*, at 236. Under the above standards, Defendant is entitled to dismissal of Plaintiff's claims based upon Defendant's qualified immunity defense.

### C. Defendant is Entitled to Qualified Immunity as to Plaintiff's Excessive Force Claim Under the Fourteenth Amendment.

#### 1. Applicable Legal Principles

Plaintiff's Fifth Amended Complaint (ECF No. 32) ("Plaintiff's Complaint") alleges an excessive force claim under the Fourteenth Amendment as her first cause of action against

Defendant. Appx. pp. 025-027.[1] Mr. Lewis was a pretrial detainee at the time of the incident in question. Appx. p. 012, ¶ 4.04. The constitutional rights of a pretrial detainee are based upon the procedural and substantive due process guarantees of the Fourteenth Amendment. *Edwards v. Loggins*, 476 Fed.Appx. 325, 326-27 (5th Cir. 2012); *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). Where a pretrial detainee is alleged to be the victim of a detention officer's use of excessive force, such a claim is subject to the same analysis as a convicted prisoner's claim for use of excessive force under the Eighth Amendment. *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). *See also United States v. Daniels*, 281 F.3d 168, 179 (5th Cir. 2002) ("[A] claim of excessive force by a law enforcement officer is correctly examined under the same standard regardless whether the claim arises under the Eighth Amendment or the Fourteenth Amendment."). Thus, a constitutional violation occurs where a detention officer uses force maliciously and sadistically for the very purpose of causing harm to the pretrial detainee, rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *Daniels*, 281 F.3d at 179-80 n. 10; *Valencia*, 981 F.2d at 1446. Force against a pretrial detainee is excessive and a violation of the Fourteenth Amendment when the force was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

The United States Supreme Court has instructed courts to consider several factors when evaluating an excessive force claim and conducting the reasonableness inquiry: (1) the extent of the injury suffered; (2) the need for application of force and the severity of the security problem at issue; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the officer; (5) any efforts made to temper the severity of a forceful

---

[1] The Complaint also mentions the Fourth Amendment (Appx. p. 008, ¶ 1.01; p. 009 ¶ 1.06; p. 020, ¶ 5.05), but the law is clear that an excessive force claim raised in the pretrial detainee context is governed by the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015).

response; and (6) whether the plaintiff was actively resisting. *Kingsley*, 576 U.S. at 397; *Hudson*, 503 U.S. at 7. *See also Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). Proof of significant injury is not required, but the absence of significant injury is relevant to whether the use of force was a wanton and unjustified infliction of harm. *Hudson*, 503 U.S. at 7-8.

When more than one officer is involved in the use of force, the court must examine the actions of the officers individually in the qualified immunity context. *Meadours v. Ermel,* 483 F.3d 417, 421-22 (5th Cir. 2007); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). To reiterate, it has long been held that the use of force against an inmate is reserved for good faith efforts to maintain or restore discipline, rather than for the purpose of causing harm. *See Daniels*, 281 F.3d at 179-80 n. 10; *Valencia*, 981 F.2d at 1446. The court must assess the reasonableness of the force from the perspective of each jailer, when the jailer is forced to make split-second decisions in tense situations. *Kingsley*, 576 U.S. at 399. *See also Fairchild v. Coryell County, Texas*, 40 F.4th 359, 363 (5th Cir. 2022).

2. Application of Legal Principles Leads to Finding of No Constitutional Harm

Plaintiff's Complaint asserts that Defendant and other detention officers, ***as a group***, beat and physically assaulted Mr. Lewis during the process of changing his clothes while in a change-out room. Appx. p. 008-009, ¶ 1.05; p. 014, ¶ 4.10; pp. 025-028, ¶¶ 7.09-7.11. Mr. Lewis later lost consciousness at the jail, was then taken to the hospital, where he later died. Appx. pp. 014-017, ¶¶ 4.11-4.16. An autopsy report concluded that the cause of death for Mr. Lewis was undetermined. Appx. p. 018, ¶ 4.19; p. 019, ¶ 4.21.

To reiterate, the court must examine the actions of the officers individually in the qualified immunity context. *Meadours*, 483 F.3d at 421-22; *Atteberry*, 430 F.3d at 253. Thus, as it pertains to Defendant, other than the general inclusion of Defendant in the list of detention

officers accused in the Complaint of wrongdoing, generally, requires the court to grant qualified immunity to Defendant because the Complaint fails to allege, except in one instance addressed below, specific facts against Defendant that she individually used excessive force against Mr. Lewis after he was handcuffed. Appx. p. 014, ¶ 4.10. The allegations of assault and harm caused against Mr. Lewis after he was handcuffed are only made against Defendant generally as part of the group of jailers in the change-out room. *Id*. After six bites at the pleadings apple, Plaintiff has failed to assert facts against Defendant in order to assess the reasonableness of the force used by Defendant ***from Defendant's perspective***, except for the one instance of specific actions taken by Defendant discussed below. *Id*. As a matter of pleading, therefore, Plaintiff's pleadings, taken as true, fail to overcome Defendant's defense of qualified immunity. *Kingsley*, 576 U.S. at 399; *Fairchild*, 40 F.4th at 363; *Hutcheson v. Dallas Cnty, Tex.*, 994 F.3d 477, 481 (5th Cir. 2021).

The sole, specific allegation against Defendant is made by reference to a triple hearsay statement provided by a Tarrant County officer in an unofficial interview report: "Officer Sawyer stated that Officer J. Tavera told her that Officer A. Grant had stood on top of Shamond with both of her feet as officers were attempting to gain control of him." Appx. p. 014, ¶ 4.10.[2] That hearsay allegation does not square with Defendant's own testimony about her actual involvement with other officers in their attempt to gain control of Mr. Lewis. Appx. pp. 001-004.

The summary judgment evidence shows that Defendant took the following actions regarding Mr. Lewis on September 23, 2022: Defendant responded to a call for assistance, saw

[2] Defendant objects to this "report" and its contents because it is an unsworn statement from an informal "investigation" by the Tarrant County Sheriff's Office of some of the persons involved with Mr. Lewis on September 22-23, 2022, and constitutes hearsay that does not satisfy any exception to the hearsay rules. Fed.R.Evid. 801-803. There are also video recordings of these informal, unsworn "interviews" that also constitute hearsay, to which Defendant objects as inadmissible evidence. Fed.R.Evid. 801-803.

Mr. Lewis on the floor resisting other officers' attempts to handcuff Mr. Lewis, assisted those officers by using her hands on Mr. Lewis' legs, the other officers were able to eventually handcuff Mr. Lewis and gain control of him, Defendant's efforts ceased, Defendant left the area and had no further involvement with Mr. Lewis. Appx. pp. 001-004; 048; 049. Defendant is seen arriving in the hallway at time mark 5:45, got to the change-out room at time mark 6:00, was inside the doorway from 6:35 to 8:54, and is seen leaning into and out of the change-out room doorway at different times. Appx. p. 049. Defendant's entire involvement with Mr. Lewis took approximately two to two and one-half minutes. Appx. p. 049, time mark 6:35 to 8:54. Defendant had no more involvement with Mr. Lewis other than to assist in gaining control of him and overcoming his resistance to being handcuffed. Appx. p. 003. Defendant had no involvement with changing Mr. Lewis' clothes, putting him in the restraint chair, or at any other time. Appx. p. 003.

Reviewing this incident from Defendant's perspective, as the court is required to do (*Kingsley*, 576 U.S. at 399; *Fairchild*, 40 F.4th at 363), and applying the factors applicable to an excessive force claim under the Fourteenth Amendment (*Kingsley*, 576 U.S. at 397; *Hudson*, 503 U.S. at 7; *Gomez*, 163 F.3d at 923), leads to the conclusion that Defendant's actions did not amount to a constitutional violation of excessive force.

In this case, the Complaint agrees with Defendant's observation that Mr. Lewis was actively resisting being handcuffed while on the floor of the change-out room. Appx. pp. 002-003; p. 013 ¶ 4.09 (Mr. Lewis "became irritated and refused to change clothes"), pp. 014-015, ¶ 4.11 (Mr. Lewis refused to put on clothes, resisted, and was handcuffed). Resisting being handcuffed constitutes active resistance and justifies the use of at least some force. *See Hutcheson*, 994 F.3d at 480 (citing *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009)).

Defendant's use of force was only applied in the context of responding to Mr. Lewis' active resistance to being handcuffed, and to assist other detention officers in their use of force to handcuff Mr. Lewis. Appx. pp. 002-003. Even the Complaint's allegation against Defendant asserts that Defendant's actions were an attempt to gain control of Mr. Lewis. Appx. p. 014, ¶ 4.10 ("Officer A. Grant had stood on top of Shamond with both of her feet **as officers were attempting to gain control of him**." (bold emphasis added)). Defendant's use of force to overcome such resistance is a good faith effort to maintain and/or to restore discipline. Appx. pp. 002-004. Such force to gain control of Mr. Lewis is, by definition under the applicable factors, not excessive under the Fourteenth Amendment. *Hudson*, 503 U.S. at 6-7; *Daniels*, 281 F.3d at 179-80 n. 10; *Valencia*, 981 F.2d at 1446.

The undisputable evidence is that Defendant only used force to assist in getting Mr. Lewis under control. Appx. pp. 002-003; p. 014, ¶ 4.10. There is no evidence that Defendant touched Mr. Lewis after he was handcuffed. After Mr. Lewis was handcuffed, Defendant's use of force ended immediately, and Defendant then left the change-out room. Appx. p. 002. Defendant did not hit, strike, kick, stand on, or even touch Mr. Lewis after he was handcuffed. Appx. p. 003. After Defendant left the room after Mr. Lewis was handcuffed, she returned to her previous work location. Appx. p. 003.

In reviewing the factors concerning the extent of the injuries suffered by Mr. Lewis by Defendant, the video footage of Mr. Lewis coming out of the change-out room several minutes after Defendant left the room reveals no apparent injury to Mr. Lewis. Appx. pp. 049, time mark 17:20-17:50. To reiterate, the Complaint alleges that Mr. Lewis' cause of death was undetermined by the Medical Examiner, so that there is no connection to Defendant's actions in that analysis. Appx. pp. 019. Defendant, therefore, caused no constitutional harm to Mr. Lewis.

3. *Res Ipsa Loquitur* is Inapplicable

To the extent that Plaintiff's allegations against Defendant is a straightforward approach that essentially asserts that Mr. Lewis went to jail, he was physically fine at that time, and Mr. Lewis was transported out of jail in an unconscious state and later died at the hospital, so that surely something went wrong while Mr. Lewis was in jail, so that he must have been physically abused, etc., while in jail, amounts to no more than a *res ipsa loquitur* basis for a claim of harm. Such a basis is insufficient to establish § 1983 liability against Defendant.

The doctrine of *res ipsa loquitur* (*i.e.*, "the thing speaks for itself") is a Texas law doctrine that is used in certain limited types of cases when the circumstances surrounding an accident constitute sufficient evidence of the defendant's negligence to support such a negligence finding. *See Pearson v. BP Products of North America, Inc.*, 449 Fed.App'x 389, 391 (5th Cir. 2011) (quoting *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990)). The doctrine, however, has never been used to support liability under federal civil rights law. *See, e.g., Gast v. Singleton*, 402 F.Supp.2d 794, 799-800 (S.D. Tex. 2005) ("Neither the Supreme Court nor the Fifth Circuit has ever held that *res ipsa loquitur* may serve as a basis for municipal liability under § 1983."); *Green v. Revel*, 2010 WL 597827, *6 (N.D. Tex., No. 2:09-CV-0147, Feb. 19, 2010) (inmate cannot rely on *res ipsa loquitur* in the absence of facts showing deliberate indifference).

Moreover, *res ipsa loquitur*, as a negligence doctrine, is not applicable because negligence does not support a civil rights violation claim. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (same); *Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137, 142 (5th Cir.1992),

*vacated on other grounds*, 15 F.3d 443 (5th Cir.1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."). Thus, to the extent Plaintiff bases her claims on a negligence/*res ipsa loquitur* basis, such a claim does not overcome Defendant's qualified immunity, either as a matter of pleading or under the evidence concerning these events because no constitutional harm can be supported by negligence.

4. <u>The Pleadings and Evidence Do Not Establish Constitutional Harm</u>

As alleged in the Complaint, and as shown in Defendant's affidavit, the need for Defendant to apply force was in order to overcome Mr. Lewis' resistance to changing clothes and being handcuffed. Appx. pp. 014, ¶ 4.10; pp. 002-003. The security problem created by Mr. Lewis was significant in his refusal to comply with the detention officers' reasonable requirement for Mr. Lewis to change clothes, a requirement applicable for all prisoners in the Dallas County Jail, and to maintain order in the jail. Mr. Lewis refused to change clothes, resisted the officers' efforts (Appx. pp. 013-014), and the detention officers had to overcome that resistance by handcuffing Mr. Lewis, to which Mr. Lewis also resisted. Appx. pp. 001-003. Defendant's involvement only concerned the need to overcome Mr. Lewis' resistance and to gain control of him. Appx. pp. 002-004. Defendant perceived Mr. Lewis' resistance when she arrived to the change-out room, and only assisted the other detention officers in the room in their efforts to overcome Mr. Lewis' resistance and handcuff Mr. Lewis. Appx. pp. 002-003. As soon as Mr. Lewis was handcuffed, Defendant left the room and had no further contact with Mr. Lewis. Appx. pp. 002-003.

There is no evidence of Defendant beating, hitting, or striking Mr. Lewis after he was

handcuffed. There is no evidence that Defendant used force to maliciously and sadistically cause Mr. Lewis harm. The evidence shows that Defendant's use of force was her good faith effort to maintain or restore discipline and overcome Mr. Lewis' actions and resistance to being handcuffed. Appx. pp. 002-004. Again, as is alleged in the Complaint, the force Defendant used was used "as officers were attempting to gain control of" Mr. Lewis. Appx. p. 014, ¶ 4.10. There is no evidence that Defendant harmed Mr. Lewis, or even touched him, after he was handcuffed. Appx. pp. 002-003; 048; 049. For Plaintiff's failure to establish that Defendant caused a constitutional injury to Mr. Lewis, Defendant is entitled to qualified immunity.

5. <u>No Violation of Clearly Established Law</u>

Next, the key element in the qualified immunity analysis is that in order to defeat Defendant's qualified immunity, Plaintiff must show that Defendant violated clearly established law. *Pearson*, 555 U.S. at 231-32; *Saucier*, 533 U.S. at 201. To reiterate, the sole, specific allegation against Defendant is that she "stood on top of" Mr. Lewis "with both of her feet as officers were attempting to gain control of" Mr. Lewis. Appx. p. 014, ¶ 4.10. Defendant disputes that allegation because her testimony provides the details of her actions with Mr. Lewis during the short time she was assisting the other officers in gaining control of Mr. Lewis. Appx. pp. 001-004; 048; 049. Nonetheless, even if the court accepts the triple hearsay statement saying Defendant "stood on top of" Mr. Lewis as true, in the context of attempting to gain control of an actively resisting inmate, there is no clearly established law that provided Defendant notice that that alleged use of force to gain control and enforce discipline in order to handcuff Mr. Lewis is unconstitutional, or even objectively unreasonable, under the Fourteenth Amendment. *Cf. Hudson*, 503 U.S. at 7; *Kingsley*, 576 U.S. at 397; *Daniels*, 281 F.3d at 179-80 n. 10; *Valencia*, 981 F.2d at 1446.

Further, there is no allegation that Defendant's actions, as alleged, caused any harm to Mr. Lewis, and the video of Mr. Lewis after being brought under control and leaving the changing room in the restraint chair, and as noted in the Medical Examiner's report, shows no injury to Mr. Lewis. Appx. pp. 018-019; 049 (time mark 17:20-17:50). Defendant's actions, therefore, did not violate clearly established law applicable to detention officers attempting to gain control of an inmate. Defendant's actions were not objectively unreasonable. Appx. pp. 002-004. There is no evidence that Defendant was either plainly incompetent or knowingly violated the law. Appx. pp. 002-004. Thus, Defendant is entitled to qualified immunity.

Plaintiff's excessive force claim under the Fourteenth Amendment should be dismissed against Defendant for Plaintiff's failure to overcome Defendant's qualified immunity.

**D. Defendant is Entitled to Qualified Immunity as to Plaintiff's Bystander Liability Claim.**

Plaintiff's Complaint alleges a bystander liability claim as her second cause of action against Defendant. Appx. pp. 027-028. Specifically, Plaintiff's Complaint asserts that Defendant observed that Mr. Lewis' constitutional rights were being violated by other detention officers' use of excessive force, yet Defendant did not intervene to stop such action. *Id.* Plaintiff's bystander liability claim against Defendant is without merit and does not survive Defendant's qualified immunity.

Bystander liability may be established where an officer: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm, and (3) chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646-47 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014). Bystander liability arises only where the plaintiff can allege and prove another officer's use of excessive force. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). *See also Whitley*, 726 F.3d at 646; *Elliot v. Linnell*, 269 Fed.Appx. 450, 451 (5th Cir.

2008). The qualified immunity analysis must also be evaluated separately for each officer when analyzing the defense vis-à-vis a bystander liability claim. *Meadours*, 483 F.3d at 421-22; *Atteberry*, 430 F.3d at 253.

Plaintiff's bystander liability claim is only asserted against Defendant as part of a group alleged to have observed a constitutional violation occurring with Mr. Lewis, yet failed to act. Appx. pp. 027-028. Reviewing this incident from Defendant's perspective, as the court is required to do (*Kingsley*, 576 U.S. at 399; *Fairchild*, 40 F.4th at 363) the general allegation that Defendant saw other jailers violating Mr. Lewis' civil rights is too general, and lacks specific allegation as to what constitutional harm was caused by a detention officer against Mr. Lewis other than a type of *res ipsa loquitur* allegation, discussed above, at pages 13-14, as being insufficient in a civil rights claim. Appx. pp. 027-028. There is no allegation of what a particular detention officer is alleged to have done by way of a constitutional violation. Appx. pp. 027-028. Thus, without specifics, Plaintiff's bystander liability claim fails as a matter of pleading. *Kingsley*, 576 U.S. at 399; *Fairchild*, 40 F.4th at 363; *Hutcheson*, 994 F.3d at 481.

Defendant was not in Mr. Lewis' presence after he was handcuffed. Appx. pp. 002-004. Defendant's contact with Mr. Lewis was only for a short time to assist other officers in handcuffing him. Appx. pp. 002-003; 049 (time mark 6:35-8:54). After Defendant saw that Mr. Lewis was handcuffed, she left the change-out room and returned to her prior work station. Appx. pp. 002-003. Defendant had no further contact with Mr. Lewis. Appx. p. 003. During her time in the change-out room assisting other officers gain control of Mr. Lewis, Defendant did not see any other officer commit bad acts or constitutional violations. Appx. pp. 003. If other detention officers committed any bad acts or took unconstitutional actions to harm Mr. Lewis after he was handcuffed, Defendant was not present and was not aware of any such actions.

Appx. pp. 003. As such, Defendant was not in a position to intervene to stop such unlawful actions. Appx. pp. 003.

Defendant, therefore, did not commit any constitutional violation, and did not act unreasonably in violation of clearly established law. *Pearson,* 555 U.S. at 231-32; *Saucier,* 533 U.S. at 201. As a result, Defendant is entitled to dismissal of this bystander liability claim because she is entitled to qualified immunity.

## III. CONCLUSION AND PRAYER

For the reasons herein stated, there is no genuine issue with respect to any material fact as to the claims asserted by Plaintiff Sophia Lewis against Defendant Annette Grant, and Defendant is entitled to summary judgment as a matter of law because Defendant has established that she is entitled to qualified immunity, and Plaintiff cannot overcome Defendant's entitlement to qualified immunity.

WHEREFORE, PREMISES CONSIDERED, Defendant Annette Grant prays that the court grant this motion, find that Defendant is entitled to qualified immunity, and dismiss Plaintiff's claims against her. Defendant prays for such other and further relief to which she may be justly entitled.

Respectfully submitted,

By: /s/ *Edwin P. Voss, Jr.*
Edwin P. Voss, Jr.
State Bar No. 20620300
evoss@bhlaw.net
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas 75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

ATTORNEY FOR DEFENDANT GRANT

## CERTIFICATE OF SERVICE

"No certificate of service is required when a paper is served by filing it with the court's electronic-filing system." Rule 5(d)(1)(B) of the Federal Rules of Civil Procedure. This paper is served upon all counsel of record in accordance with Rule 5(b)(2) of the Federal Rules of Civil Procedure, therefore, because it was filed with the court's electronic-filing system on June 14, 2024.

*/s/ Edwin P. Voss, Jr.*
Edwin P. Voss, Jr.