**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SOPHIA LEWIS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF SHAMOND LEWIS, DECEASED** | § § § § § | |
| **VS.** | § § | |
| **DALLAS COUNTY; et al** | § | **CIVIL ACTION NO. 3:23-CV-00381-D** |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS ADARIA JOHNSON, LVN, KELECHI NWAZUE, RN, CARMEN DAVIS, RN, AND YEWANDE WILSON, NP'S MOTION FOR RULE 7 REPLY**

---

TO THE HONORABLE COURT:

COMES NOW, SOPHIA LEWIS, Individually and As Representative of the Estate of Shamond Lewis, Deceased, and files this Response to Defendants Adaria Johnson, LVN, Kelechi Nwazue, RN, Carmen Davis, RN, And Yewande Wilson, NP's Motion for Rule 7 Reply.

## I. PROCEDURAL BACKGROUND

Plaintiff filed this suit pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks damages for the violations of the constitutional rights of her son Shamond Lewis while he was incarcerated as a pretrial detainee in the Dallas County Jail, and the wrongful death of Shamond Lewis as a result of injuries he sustained in the Dallas County Jail under the Texas wrongful death statute, and as representative of his Estate, damages under the Texas survival statute.

On January 23, 2024, Plaintiff filed her Fifth Amended Complaint (doc. #32). Plaintiff added as defendants the Dallas County Hospital District d/b/a Parkland Health ("Parkland") and

several Dallas County employees who were medical providers at the Dallas County Jail when Shamond Lewis was incarcerated there. On May 24, 2024, four of the medical providers—Adaria Johnson, LVN, Kelechi Nwazue, RN, Carmen Davis, RN, and Yewande Wilson, NP—filed an Answer (doc. #58). On June 3, 2024, Defendants Adaria Johnson, LVN, Kelechi Nwazue, RN, Carmen Davis, RN, and Yewande Wilson, NP filed a Motion for Rule 7 Reply (doc. #60), with an accompanying order (doc #60.1), and a Brief in Support of the Motion for Rule 7 Reply (doc. #61).

To date, Adaria Johnson, LVN, Kelechi Nwazue, RN, Carmen Davis, RN, and Yewande Wilson, NP (collectively referred to as "the medical provider defendants"), have not filed a motion to dismiss or a motion for summary judgment related to qualified immunity. The medical provider defendants have asserted qualified immunity in their Answers.

## II. ARGUMENT AND AUTHORITIES:

A Rule 7(a) reply is only considered when the claims in the complaint are not supported with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts. *See Cunningham v. City of Balch Springs*, No. 3:14-CV-59, 2014 WL 4851576, at *4 (N.D. Tex. Sept. 30, 2014). In this case, Plaintiffs' Complaint contains facts showing that the medical provider defendants' conduct violated clearly established constitutional rights of Plaintiff.

To determine whether Defendants are entitled to qualified immunity, the Court must decide if the facts alleged, taken in the light most favorable to Plaintiff, show that Defendant violated a constitutional right. *Saucier v. Katz*, 522 U.S. 194, 201 (2001). If a constitutional violation can be made out based on a favorable view of Plaintiff's pleadings, the Court need only determine if the right at issue was clearly established at the time of the injury. *Id*.

Here, there is no dispute that the alleged constitutional violation, namely deliberate indifference to serious medical needs was clearly established prior to September 22, 2022.[1] Nor is there any dispute that any of the defendants were acting under color of state law as medical providers at the Parkland when they interacted with and failed to treat Plaintiff[2]. *See* Defendants' Motion Page 2.

Thus, as long as Plaintiff has alleged facts showing that (1) Mr. Lewis had a serious medical need, and (2) Defendants were deliberately indifferent to that need, the Court should deny Defendants' motion.

**A. Legal Standard**

Section 1983 claims implicating qualified immunity are subject to the same "pleading standard set forth in Twombly and Iqbal as all other claims." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). That is, "an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Id.* Following the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Fifth Circuit has stated, "Section 1983 claims implicating qualified

[1] *See, Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer*, 533 U.S. 825, 847 (1994).

[2] See Defendants' Motion, Page 2

> "Defendants, each sued herein in their private/individual capacity, have answered asserting that at the time and on the occasion in question they were acting within the scope of their employment as a health care professional with the Dallas County Hospital District d/b/a Parkland Health ("DCHD/Parkland"), and they have each plead the defense of qualified immunity."
>
> "DCHD/Parkland was and is a governmental entity, i.e. a hospital district, which is a political subdivision of the State of Texas created and existing pursuant to Texas Constitution Article IX, §4, and Texas Health & Safety Code §281.002. *See Kassen v. Hatley*, 887 S.W.2d 4, 13 (Tex. 1994); *Scott v. Dallas County Hospital District*, 2010 WL 7138 *6 (N.D. Tex. 2010); and *Tarrant County Hosp. Dist. v. Ray*, 712 S.W.2d 271, 273-74 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.) ("hospital district" held to be a "local unit of government" for purposes of the Texas Tort Claims Act)."

immunity are subject to the same Rule 8 pleading standard set forth in Twombly and Iqbal as all other claims; an assertion of qualified immunity in a defendant's . . . motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold,* 979 F.3d at 267 (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)). The "immunity-from-suit interest does not require that the plaintiff's original complaint exceed the short-and-plain-statement standard of Rule 8." *Id*. (citation omitted). Rather, Plaintiff simply "must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Id*.

Plaintiff's Fifth Complaint meets the heightened pleading standard necessary to overcome the requirement of a reply tailored to an answer pleading the defense of qualified immunity. Plaintiff alleges the individual Defendants, through deliberate indifference to the substantial risk of harm to the Plaintiff, deprived the Plaintiff of his clearly established federal constitutional rights, including, but not limited to, the right to reasonably safe and healthful conditions of confinement, the right to be free of severe pain, the right to appropriate medical care and accommodation of his medical condition, and the right to be free from cruel and unusual punishment.

For a pre-trial detainee to state a claim for denial of medical care against a prison official, the plaintiff must allege that "a prison official is deliberately indifferent to a pre-trial detainee's serious medical needs in violation of the Fourteenth Amendment if he (1) was subjectively aware of the risk and (2) disregarded the risk by failing to take reasonable measures to abate it." *Burton v. Owens*, 511 Fed. Appx. 385 (5th Cir. 2013).

**B. Plaintiff's Factual Allegations**

In Plaintiff's Fifth Amended Complaint ("FAC"), Plaintiff recounts the circumstances of her son Shamond Lewis's arrest and detention, including that jail officers "over the course of 12 minutes out of the range of cameras, first placed Mr. Lewis in handcuffs, then physically beat,

stood on him, and assaulted Mr. Lewis while forcibly changing his clothes prior to placing him in a six-point restraint chair." (FAC at ¶ 4.10) Then,

> Dallas County Jail officials claim that as they provided Mr. Lewis some water, his eyes rolled back, and he immediately became unresponsive and was not breathing well – creating an emergency situation. According to the officer's records, the officers waited and allowed Mr. Lewis to be in this medical situation for seven (7) minutes. It wasn't until 1:00 a.m. that Mr. Lewis was taken to the MAP'S nurses' station. When Officer Loboda attempted to give Mr. Lewis some water, he noticed Mr. Lewis' breathing was worse and his eyes had rolled back in his head. Officer Loboda called for a nurse, *and it took the nurse five minutes to arrive*. The Officers realized that Mr. Lewis was not breathing and needed emergency care and they needed to shock his heart. Officer Tavera *had to call twice for an automatic external defibrillator* before it was brought to Mr. Lewis. According to Officer Tavera, "*the medical staff was not prepared to assist the inmate*." Fifty minutes later, at 1:43 a.m., Parkland Hospital was notified by EMS of Mr. Lewis's impending arrival.

(FAC at ¶ 4.11 *emphasis added*). Another record reflects that the officers "had to call the nurse three times to come and check the inmate" and that jail staff had to help with CPR after the defibrillator was eventually located. (*Id.*) When Mr. Lewis was transported to Parkland a few minutes later, he was unresponsive and in critical condition. (FAC at ¶ 4.12) A few hours later he was comatose; six days later, Mr. Lewis was pronounced brain dead and died. (FAC at ¶ 4.15 - 4.16).[3]

Based on Dallas County Jail documents, jail officers had to repeatedly request that a nurse attend Mr. Lewis, who was in an emergency situation, but "the medical staff was not prepared to assist the inmate."

[3] The Fifth Amended Complaint is attached as Exhibit 1.

DATE: 09/23/2022

To: SGT Loboda #1013

From: DSO Tavera #10084

Subject: LEWIS, SHAMOND #22036366

Thru: Channels

On September 23, 2022 at approximately 12:50 am we brought the inmate LEWIS, SHAMOND #22036366 to the booking window to book him in. Inmate was cooperating at the booking process and when he was escorted to the dressing area he stopped and he said "I'm not going in there". He did not cooperate and refused to go changed, SGT Loboda asked again and he got irritated and did not follow the process. We tried to place him in handcuffs but he resisted, once in handcuffs we cut his clothes and change him. We had to place him in the restrain chair and took him to MAP. When we arrived to MAP, SGT Loboda got him water and We call the nurse to come and checked the inmate. We had to call the nurse three times to come and check the inmate. Two minutes past and the inmate became unresponsive. We took him to the nurse station and the nurse check him and there was no pulse. The medical staff was not prepared to assist the inmate. I had to call for the AED twice, SGT Loboda and I had to help with CPR and were there assisting with CPR until the paramedics arrived.

Screenshot from Internal Memo RE Shamond Lewis[4]

The specific allegations against the medical provider defendants are found directly in paragraphs section VI of Plaintiff's Fifth Amended Complaint. Specifically, paragraph 6.04 lays out direct allegations against the medical provider defendants including but not limited to:

a. Failure to take reasonable or appropriate precautions to prevent Mr. Lewis' death;

b. Failure to provide appropriate medical evaluation and/or treatment to Mr. Lewis to address his known, obvious medical condition(s); and,

c. Refusing to treat Mr. Lewis, ignoring his complaints, intentionally treating him incorrectly, or engaging in similar conduct that would evidence a wanton disregard for serious medical needs.

FAC at ¶ 6.04

One of the key issues to be resolved is that based on Dallas County Jail documents, jail officers had to repeatedly request that a nurse attend Mr. Lewis, who was in an emergency situation, but "the medical staff was not prepared to assist the inmate." The medical records that

[4] This Document, previously produced in this litigation, is attached as Exhibit 2.

Defendants' tout do not answer the question of why was the medical staff not prepared to assist Mr. Lewis, and full discovery on this issue is warranted.

**C. First Prong – Deliberate Indifference**

It is well-settled law that a "state official's episodic act or omission violates a pretrial detainee's due process rights to medical care if the official acts with subjective deliberate indifference to the detainee's rights." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996) (citations omitted). Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) This has been clearly established law since the decision in *Gamble* in 1976.

The facts set forth in the Amended Complaint, which must be accepted as true and construed in Lewis' favor, satisfy this standard. Plaintiff has properly pleaded that these defendant medical providers violated Mr. Lewis's constitutional rights by acting with deliberate indifference to Mr. Lewis's serious medical needs. (FAC at ¶ 6.02).

Numerous cases finding liability for the failure to carry out medical orders have been decided: *Lawson v. Dallas County*, 286 F.3d 257 (5th Cir. 2002) (failure to follow medical orders for care of paraplegic prisoner); *Walker v. Benjamin*, 293 F.3d 1030 (7th Cir. 2002) (refusal to provide prescribed pain medication); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (denial of prescription eyeglasses); *Erickson v. Holloway*, 77 F.3d 1078, 1080 (8th Cir. 1996) (officer's refusal of emergency room doctor's request to admit the prisoner and take x-rays); *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (nurse's failure to perform prescribed dressing changes).

**D. Second Prong – Objectively Unreasonable Conduct**

The second part of the test focuses on whether a defendant's conduct was objectively unreasonable. The conduct of the jailers was objectively unreasonable in light of clearly established law at the time of the incident. Officials will be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established constitutional rights if they "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)(en banc). The determination of the objective reasonableness of particular conduct in light of the subjective deliberate indifference standard is a question of law for the court. *See Hare*, 135 F.3d_at 328. "The subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident.... And under that standard--the minimum standard not to be deliberately indifferent--the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable." *Id*. at 328. "Deliberate indifference" is a subjective, actual-knowledge standard. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The plaintiff need not show that defendants knew of a specific risk to him from a specific source. *Farmer*, 511 U.S. at 843; *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Knowledge can be demonstrated by circumstantial evidence, and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. *See Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) n. 17 ("the obvious and pervasive nature of these conditions supports the trial court's conclusion that [defendants] displayed a deliberate indifference to these conditions").

Plaintiff has plead sufficient facts from which it can be inferred that the medical providers had subjective knowledge of a substantial risk of serious harm to Shamond Lewis but responded

with deliberate indifference to that risk. The Fifth Circuit has defined a serious medical need as one which is "so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Laymen certainly can recognize that a person who stops breathing, like Shamond Lewis in the case at hand, has a serious medical need.

## III. CONCLUSION:

A pre-trial detainee states a claim for denial of medical care against prison officials if the complaint alleges that the prison officials were subjectively aware of a risk and disregarded the risk by failing to take reasonable measures to abate it. *See Burton*, 511 Fed. Appx. at 389. As stated above, the Amended Complaint contains factual allegations that the medical provider defendants were aware of the risk to Shamond Lewis but failed to take reasonable measures to abate the risk. Lewis therefore has stated a claim for denial of medical care which defeats Adaria Johnson, LVN, Kelechi Nwazue, RN, Carmen Davis, RN, and Yewande Wilson, NP's qualified immunity defense. *See Burton*, 511 Fed. Appx. at 389. As such the motion should be denied.

Alternatively, in the event the Court determines that a Rule 7(a) reply is necessary and that discovery should also be limited, the Plaintiff would argue that discovery is necessary on the issue of qualified immunity[5].

[5] *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995). recognizes that a plaintiff may need discovery in order to craft his Rule 7(a) reply when the court states that a district court may limit any necessary discovery to the defense of qualified immunity.

Respectfully submitted,

**CLARK | VON PLONSKI | ANDERSON**

By: /s/ *Jacob von Plonski*
**COLLEN A. CLARK**
State Bar No. 04309100
**JACOB L. von PLONSKI**
State Bar No. 24098554
**R. CONNOR BARBE**
State Bar No. 24108598
**LINDA LE**
State Bar No. 24126312
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214-780-0500
214-780-0501 Facsimile
Eservice – eservice@cvpalaw.com

*In association with:*

**THE PIPKIN LAW FIRM**

**STEPHEN C. PIPKIN**
State Bar No. 00784766
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
Telephone: 214-780-0512
Facsimile: 866-789-6956
Email – steve@pipkinlawfirm.com
tamy@pipkinlawfirm.com
***Attorneys for Plaintiff***

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record is being served with a copy of this document via the Court's CM/ECF system on this the 24th day of June, 2024.

JOHN CREUZOT CRIMINAL DISTRICT ATTORNEY DALLAS COUNTY, TEXAS
Joseph W. Spence, Assistant District Attorney
Jason G. Schuette, Assistant District Attorney
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202

**ATTORNEYS FOR DEFENDANTS DALLAS COUNTY, CHRISTOPHER LOBODA, JAMES MCDANIEL, JAVIER TAVERA-LUNA, ROCHELLE ROEMEN, AND FUQUAN CHILDRESS**

Edwin P Voss , Jr.
BROWN & HOFMEISTER
740 E Campbell Rd., Suite 800
Richardson, Texas 75081
**ATTORNEY FOR DEFENDANT ANNETTE GRANT**

Winston L Borum
WATSON CARAWAY MIDKIFF & LUNINGHAM LLP
306 W 7th Street, Suite 200
Fort Worth, TX 76102
**ATTORNEY FOR DEFENDANTS ADARIA JOHNSON, LVN, KELECHI NWAZUE, RN, CARMEN DAVIS, RN, AND YEWANDE WILSON, NP**

*/s/ Jacob von Plonski*
**JACOB von PLONSKI**