IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SOPHIA LEWIS, Individually and          §
As Representative of the Estate         §
of Shamond Lewis, Deceased,             §
                                        §
                    Plaintiff,          §
                                        §        Civil Action No. 3:23-CV-0381-D
VS.                                     §
                                        §
DALLAS COUNTY, et al.,                  §
                                        §
                    Defendants.         §

MEMORANDUM OPINION
AND ORDER

Plaintiff Sophia Lewis ("Lewis"), individually and as representative of the estate of

Shamond Lewis, sues defendants Dallas County, Texas (the "County"), the Dallas County

Hospital District, d/b/a Parkland Health ("DCHD"), and various County detention officers

and medical providers under 42 U.S.C. § 1983, asserting claims for alleged deprivations of

her deceased son Shamond's constitutional rights. Four County employees—defendants

Adaria Johnson, L.V.N ("Johnson"), Kelechi Nwazue, RN ("Nwazue"), Carmen Davis, RN

("Davis"), and Yewande Wilson, NP ("Wilson") (collectively, the "Medical Providers"

unless the context indicates otherwise)—move to compel Lewis to file a Fed. R. Civ. P. 7(a)

reply. Defendant Officer Annette Grant ("Officer Grant") moves for summary judgment

based on the defense of qualified immunity. Lewis opposes both motions and moves under

Rule 56(d) to supplement the summary judgment record. For the reasons that follow, the

court grants the Medical Providers' motion for a Rule 7 reply, denies Lewis' motion to

supplement the summary judgment record, grants Officer Grant's motion for summary judgment, and dismisses Lewis' claims against Officer Grant by Rule 54(b) final judgment filed today.

I

Prior to the events giving rise to this lawsuit, Shamond lived alone, was physically healthy, and took prescribed medication for his mental health condition: paranoid schizophrenia.[1]  On September 22, 2022 Shamond was arrested for aggravated assault and booked into the Dallas County Jail ("Jail") without incident as a pretrial detainee.  During the booking process, Jail personnel noted Shamond's mental illness on his Intake Assessment, and initially placed him on suicide precaution to be monitored in an intake single cell holding unit.  Later that evening, at approximately 11:30 p.m., Shamond was transferred to the second floor release section to be processed into a housing unit.  Shamond was again placed in a single cell holding unit.

At approximately 12:45 a.m., Shamond was escorted by defendants Sergeant Christopher Loboda ("Sergeant Loboda"), Officer Javier Tavera-Luna ("Officer Tavera"), and Officer James McDaniel to the changeout room to change into jail attire.  According to Sergeant Loboda, Shamond refused to change out of his clothes.  When Sergeant Loboda

---

[1]In the context of Officer Grant's summary judgment motion, the court views the evidence in the light most favorable to Lewis as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

- 2 -

attempted to restrain him, Shamond "pulled away from [him] and curled into a ball." P. Br. (ECF No. 84) at 4. Sergeant Loboda then gave Shamond several commands to "give us his hands and quit resisting," *id.*, but Sergeant Loboda was unable to place both handcuffs on Shamond.

During the struggle, one of the assisting officers placed an officer assist call, to which Officer Grant and five other detention officers responded. When Officer Grant arrived in the changeout room, she observed Shamond on the floor in a face-down position with his left arm under his body, resisting the officers' efforts to handcuff him. According to Lewis, Officer Grant then stood on top of Shamond's legs and "might have moved up from the legs to the upper parts of [Shamond]'s body." P. Br. (ECF No. 84) at 7 (citing P. App. (ECF No. 85) at 22-23). Officer Grant disputes this allegation, contending instead that she assisted the detention officers who were trying to gain control of Shamond by using her hands on Shamond's thighs. It is undisputed that, after approximately 1-2 minutes, Shamond was brought under control and handcuffed. Officer Grant then left the changeout room.

The remaining officers changed Shamond's clothes and placed him in a six-point restraint chair. Immediately afterward, as Jail officials were providing Shamond water, his eyes rolled back, he became unresponsive, and he had difficulty breathing. At around 1:00 a.m., Shamond was taken to the nurses station where officers realized that Shamond was not breathing and needed emergency care. Officer Tavera called twice for an automatic external defibrillator before it was brought to Shamond. According to Officer Tavera, "the medical staff was not prepared to assist the inmate."

Shamond was eventually transported to Parkland Hospital ("Parkland"). When he arrived, he was unresponsive and in critical condition. Shamond's medical records from Parkland note that he "likely suffered severe anoxic brain injury," and that "[m]ulti-system organ failure seems to be a result of shock state which is common following an arrest." *Id.* ¶ 4.14. Shamond remained at Parkland in critical condition until his death on September 29, 2022. An autopsy followed, and in the custodial death report, the Medical Examiner concluded that the cause and manner of death "remains undetermined." *Id.* ¶ 4.19.

Lewis then brought this lawsuit. In her Fifth Amended Complaint ("Complaint"), which is the operative pleading in this case, Lewis asserts claims under 42 U.S.C. § 1983 against the County for violating Shamond's Fourth and Fourteenth Amendment rights; against DCHD and "Unknown 1-7 Medical Providers"[2] for violating Shamond's Fourteenth Amendment rights; and against Officer Grant and five other County detention officers for using excessive force, in violation of Shamond's Fourteenth Amendment rights and for bystander liability.

---

[2]Lewis alleges that she "does have the following partial names of Unknown medical providers 1-7," and lists the following:

      1.  Nurse A. Johnson, LVN[;]
      2.  Y. Wilson, Provider;
      3.  C. Davis, Provider;
      4.  W. Patricia, RN;
      5.  K. Nmazue, RN;
      6.  M. Annah, LVN; and,
      7.  A. Ola, LVN

Compl. ¶ 3.05.

The Medical Providers—i.e., Johnson, Nwazue, Davis, and Wilson, who are four of the "Unknown 1-7 Medical Providers"—move the court to order Lewis to file a Rule 7 reply. Officer Grant moves for summary judgment. Lewis opposes both motions and also moves under Rule 56(d) for leave to supplement the summary judgment record. The court is deciding the motions on the briefs, without oral argument.

## II

The court turns first to the Medical Providers' motion for a Rule 7(a) reply.

### A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts . . . alleged show that defendants' conduct violated a

constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.")).[3]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory

---

[3] *Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation.  *Id*.  The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."  *Id*. at 242.

right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)). Although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a). *Schultea*, 47 F.3d at 1433. "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id*. "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff['s] injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). The case should not be allowed to proceed unless plaintiff can assert specific facts that, if true, would overcome the defense. *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]"). The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely

- 7 -

require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

B

The court concludes that greater detail might assist in determining whether any of the

Medical Providers is entitled to qualified immunity.

In her complaint, Lewis has grouped all of the "unknown 1-7 Medical Providers"

together, alleging that

> Defendants unknown 1-7 Medical Providers were legally
> responsible to follow and implement the policies of the Dallas
> County Sheriff's Department and the United States Constitution
> with respect to all matters concerning the medical care of
> inmates in the Dallas County Jail. Defendants unknown 1-7
> Medical Providers were responsible for ensuring that all medical
> devices and equipment are available to immediately apply
> medical care, and providing medical treatment to all inmates,
> including Shamond Lewis, in compliance with federal and state
> law, department and agency policies, and rules, regulations and
> related standards of care, including the implementation of the
> policies, procedures, practices, and customs and the acts and
> omissions challenged by this suit.

Compl. ¶ 3.06 (bold font omitted). In setting out her cause of action against the Medical

Providers, Lewis alleges that the Medical Providers:

> a.  Fail[ed] to take reasonable or appropriate precautions to
> prevent [Shamond]'s death;
> b.  Fail[ed] to provide appropriate medical evaluation and/or
> treatment to [Shamond] to address his known, obvious medical
> condition(s); and
> c.   Refus[ed] to treat [Shamond], ignoring his complaints,
> intentionally treating him incorrectly, or engaging in similar
> conduct that would evidence a wanton disregard for serious
> medical needs.

*Id.* ¶ 6.04.  And she pleads in the alternative that the Medical Providers "are liable for

- 8 -

violating their applicable jail inmate standards of care and causing death and pre-death pain and suffering of [Shamond]." *Id.* ¶ 6.05.

Lewis' mostly conclusory allegations describe collective action not assigned to any specific Medical Provider and fail to plead any conduct by any particular Medical Provider that allegedly violated Shamond's constitutional rights. Lewis' "failure to attribute conduct to any of the [Medical Providers] or to separate out the allegations against the various [Medical Providers] makes it impossible to determine whether the defendant in question acted in an objectively unreasonable manner in light of clearly established constitutional standards." *Fisher v. Dallas Cnty.*, 299 F.R.D. 527, 532-33 (N.D. Tex. Apr. 18, 2014) (Fitzwater, C.J.) (citing *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008)); *see also Bonham v. Winn*, 2021 WL 1312634, at *2 (N.D. Tex. Apr. 8, 2021) (Fitzwater, J) (requiring Rule 7(a) reply where "some allegations [in the complaint] describe collective action not assigned to any particular officer" and plaintiff "has not pleaded specific facts demonstrating a genuine issue as to the illegality of [one of the defendant officer's] activity."); *Little v. Tex. Att'y Gen.*, 2015 WL 1859457, at *4 (N.D. Tex. Apr. 23, 2015) (Fitzwater, J.) (requiring Rule 7(a) reply where plaintiff referred to individual defendants "as undifferentiated members of a collective group of 'Defendants,'" and where, *inter alia*, "[t]here are several . . . conclusory allegations in the amended complaint in which all the Individual Defendants are lumped together.").

Accordingly, under the authority granted in *Schultea*, 47 F.3d at 1433, the court orders that, within 28 days of the date this memorandum opinion and order is filed, Lewis file a

Rule 7(a) reply that alleges with particularity all material facts that she contends establish her right to recover under § 1983 against each Medical Provider for violating a constitutional right. *See Reyes*, 168 F.3d at 161. After Lewis files her Rule 7(a) reply, the Medical Providers may move for judgment on the pleadings or for other relief available by motion, if they have grounds to do so.

## C

In the concluding sentence of her response to the Medical Providers' motion, Lewis states: "in the event the Court determines that a Rule 7(a) reply is necessary and that discovery should also be limited, the Plaintiff would argue that discovery is necessary on the issue of qualified immunity." P. Resp. (ECF No. 78) at 9. To the extent that Lewis seeks discovery on the issue of qualified immunity, the court denies her request at this time.

"One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)). In this circuit, it is established that "[d]iscovery . . . must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995); *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 481 (5th Cir. 2021).

> [A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *After* the district court finds a plaintiff has so pled,

> if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim."

*Backe*, 691 F.3d at 648 (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)).

Because Lewis has not yet alleged sufficient facts to overcome the Medical Providers' defense of qualified immunity, discovery in this case—even limited discovery—must be stayed. *See Vess v. City of Dallas*, 2022 WL 1471432, at *2 (N.D. Tex. May 10, 2022) (Fitzwater, J.) (citing cases); *see also Hutcheson*, 994 F.3d at 481 ("Before limited discovery is permitted, a plaintiff seeking to overcome [qualified immunity] must assert facts that, if true, would overcome that defense.").

### III

The court now considers Officer Grant's motion for summary judgment.

### A

When a summary judgment movant will not have the burden of proof on a claim at trial, she can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once she does so, the nonmovant must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the

- 11 -

nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

### B

When qualified immunity has been raised, "[t]he moving party is not required to meet [her] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (citation omitted). Rather, the movant need only plead her good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id*. (emphasis and citation omitted); *see also Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

### IV

Officer Grant asserts the defense of qualified immunity to Lewis' Fourteenth Amendment excessive force claim.

A

Because Shamond was a pretrial detainee at the time of the alleged use of excessive force, the Fourteenth Amendment's Due Process Clause applies. *Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021) ("The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." (citation omitted)). Under the Fourteenth Amendment, pretrial detainees have a constitutional right to be free from "the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Use of force on a pretrial detainee is "excessive" if it is "*objectively* unreasonable." *Id.* at 392.

To determine whether an officer's use of force was objectively reasonable, courts look to the "facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham*, 490 U.S. at 396). The Supreme Court has emphasized that

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.

*Id*. (quotation marks, brackets, and internal citations omitted). The Court also noted that the following factors "may bear" on the reasonableness or unreasonableness of the force used:

the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. ("*Kingsley* factors").

B

Officer Grant maintains that the pleadings and evidence do not establish constitutional harm, contending, *inter alia*, that the complaint largely fails to allege that she, as opposed to the group of jailers in the changeout room, used excessive force against Shamond; the "triple hearsay" statement provided by a Tarrant County officer in an unofficial interview report[4] is inconsistent with Officer Grant's own testimony about her actual involvement with other officers in their attempt to gain control of Shamond; the summary judgement evidence shows that she responded to a call for assistance, saw Shamond on the floor resisting other officers' attempts to handcuff him, assisted those officers by using her hands on Shamond's legs, and left the area and had no further involvement with Shamond after the other officers handcuffed and gained control of Shamond; her use of force was only applied in the context of responding to Shamond's active resistance to being handcuffed and assisting other detention officers in their use of force to handcuff him; and reviewing the incident from her perspective and applying the *Kingsley* factors leads to the conclusion that her actions did not

---

[4]The report states: "Officer Sawyer stated that Officer J. Tavera told her that Officer A. Grant had stood on top of Shamond with both of her feet as officers were attempting to gain control of him." D. App. (ECF No. 72) at 14.

amount to excessive force.[5]  She also argues that there is no clearly established law that provided her with notice that the alleged use of force to gain control and enforce discipline in order to handcuff Shamond was unconstitutional, or even objectively unreasonable under the Fourteenth Amendment.

Lewis responds that Officer Grant's use of force was unreasonable, unnecessary, and excessive under the *Kingsley* factors.  Based on evidence that Officer Grant stood on Shamond's legs while he was in a prone position, face down on the floor, and that Officer Grant "might have moved up from the legs to the upper parts of [Shamond]'s body," P. Br. (ECF No. 84) at 7 (citing P. App. (ECF No. 85) at 22-23))[6]—Lewis contends that the amount of force that Officer Grant used was disproportionate to the need for the use of force, especially considering that Shamond only weighed 178 pounds, and there were as many as nine other officers in the changeout room during the incident; there is no evidence that Officer Grant made any effort to temper or limit the amount of force she used; that "one mentally ill inmate's resistance to having his clothes changed . . . did not create a 'severe security problem' for the Jail that warranted such an immediate escalation of force," *id.* at 16; and that, although Shamond *was* resisting officers' attempts to change his clothes, he had

_____

[5]Officer Grant also argues that, to the extent that Lewis relies on a *res ipsa loquitur* theory to establish a constitutional harm, that theory is inapplicable in the § 1983 qualified immunity context. [D. Br. (ECF No. 71) at 13-14]

[6]In her summary judgment reply, Officer Grant makes objections to Lewis' summary judgment evidence, including an objection to Officer Tavera's statement under Fed. R. Evid. 801-803.  Because the court is granting Officer Grant's motion for summary judgment, it overrules the objections without prejudice as moot.

- 15 -

pulled away from Sergeant Loboda and "curled into a ball," P. App. (ECF No. 85) at 6, and there "is not a shred of evidence to suggest that [Shamond] affirmatively attacked the officers to intentionally injure them," P. Br. (ECF No. 84) at 17.  Regarding the second prong of the qualified immunity analysis, Lewis posits that the evidence shows "that [Officer] Grant stood on [Shamond], using her entire body weight on him when he was on the floor, on his stomach, surrounded by officers," and that the Fifth Circuit has "long denied" qualified immunity for jail officials in similar situations, citing *Simpson v. Hines*, 903 F.2d 400 (5th Cir. 1990) as an example.  P. Br. (ECF No. 84) at 18.

C

The court will assume *arguendo* that Lewis can produce admissible evidence that Officer Grant stood with her entire body weight on Shamond while he was on the floor, on his stomach, surrounded by officers.  The court will further assume that this conduct violated Shamond's Fourteenth Amendment right as a pretrial detainee to be free from the objectively unreasonable use of force.  Even having made these assumptions, the court concludes that Officer Grant is entitled to qualified immunity on Lewis' § 1983 excessive force claim.  This is so because it was not clearly established at the time of the incident that Officer Grant's alleged use of such force under the circumstances—i.e., in the context of the detention officers' attempts to gain control of Shamond after he resisted being handcuffed—violated the Fourteenth Amendment.

1

Under the second prong of the qualified immunity analysis,[7] courts consider "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008); *see also Wood v. Moss*, 572 U.S. 744, 758 (2014) ("The 'dispositive inquiry,' we have said, 'is whether it would have been clear to a reasonable officer' in the [defendant's] position 'that [her] conduct was unlawful in the situation [she] confronted.'" (brackets omitted) (quoting *Saucier*, 533 U.S. at 202)).  To make this determination, the court must

> ask whether the law so clearly and unambiguously prohibited [the defendant's] conduct that *every* reasonable official would understand that what [she] is doing violates the law.  To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (brackets and internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  While "a case directly on point" is not required for the court to conclude that the law is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.  Moreover, a court may not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."

---

[7]Under *Pearson*, 555 U.S. at 236, the court may consider the second *Saucier* prong first.

- 17 -

*Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (internal quotation marks and citation omitted). The Fifth Circuit has explained that "[t]he central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

2

Lewis has failed to point to any controlling authority that would have put Officer Grant on notice that standing on Shamond's legs with her entire body weight while the other officers in the changeout room attempted to control and handcuff him constituted an objectively unreasonable use of force in violation of Shamond's Fourteenth Amendment rights. She cites just one case, *Simpson*, to support the assertion that "a reasonable officer would have concluded that [Officer] Grant used excessive force on [Shamond] by placing her entire body weight on him in violation of his Fourteenth Amendment rights." P. Br. (ECF No. 84) at 19. But *Simpson* is factually distinguishable.

In *Simpson* when Kenneth Simpson ("Simpson"), a pretrial detainee, resisted the defendant officers' efforts to search his pockets, one of the officers

> put his arm around Simpson's neck while the other officers grabbed Simpson's arms and legs. The officers forced Simpson to the floor and attempted to handcuff him while [Officer] Broussard, nicknamed "Beef" due to his large size, sat on Simpson's chest. Unable to restrain Simpson in this position,

they rolled him on his stomach, cuffed his hands behind his
back, and cuffed his legs.

*Simpson*, 903 F.2d at 402.  In an audio recording of the incident, Simpson can be heard

asking the officers to "lighten up," and then begging for help and screaming.  *Id.*  Later that

morning, Simpson was discovered dead in his cell.  *Id.*  According to the medical examiner's

report, he died "as a result of asphyxia due to trauma to [the] neck."  *Id.* (alteration in

original).  The plaintiff also produced evidence that Simpson "could have died of

asphyxiation resulting from the pressure exerted when Broussard sat on his chest."  *Id.* at

403.  The Fifth Circuit affirmed the district court's denial of the defendant officers' motion

to dismiss or alternatively for summary judgment on qualified immunity, finding "ample

evidence that the defendant officers who entered Simpson's cell reasonably should have

known that in subduing and searching Simpson they maliciously used force which was

grossly disproportionate to the need and was calculated to injure Simpson severely."  *Id.*

Unlike *Simpson*, however, there is no evidence in this case, or even an allegation, that

Officer Grant stood on, or put her entire weight on, Simpson's chest, possibly causing

asphyxiation.  Nor has Lewis cited any other case law that would have put Officer Grant on

notice that standing on, or putting her entire weight on, Simpson's legs in an attempt to bring

him under control constituted an objectively unreasonable use of force.  *Cf. Brown v.*

*Coulston*, 463 F.Supp.3d 762, 777 (E.D. Tex. 2020) ("[P]recedent within this circuit shows

. . . that there is no clearly established law that a police officer may not handcuff or otherwise

use his body weight to restrain a student, including a student who has special needs and is

- 19 -

repeatedly disruptive, combative, noncompliant, and resisting the officer's commands.").

Accordingly, under the second step of the qualified immunity analysis, the court holds that

Officer Grant is entitled to qualified immunity as to Lewis' § 1983 excessive force claim.

V

Lewis moves under Rule 56(d) to supplement the summary judgment record.  In

support of her motion, she maintains that she should be permitted to conduct six depositions[8]

to obtain additional information to properly respond to Officer Grant's motion.

A

"Rule 56(d) functions as a safe harbor that has been built into the rules so that

summary judgment is not granted prematurely." *State Farm Fire & Cas. Co. v. Whirlpool

Corp.*, 2011 WL 3567466, at *2 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Union

City Barge Line v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987)).  The Rule

states:

> [i]f a nonmovant shows by affidavit or declaration that, for
> specified reasons, [she] cannot present facts essential to justify
> [her] opposition, the court may: (1) defer considering the motion
> or deny it; (2) allow time to obtain affidavits or declarations or
> to take discovery; or (3) issue any other appropriate order.

Rule 56(d).

In qualified immunity cases, the court "use[s] a two-step procedure 'under which a

---

[8]Lewis "asks for the following depositions" to obtain information regarding Officer
Grant's assertion of qualified immunity: Detective Williams, Sergeant Shelton, Officer
Grant, Susan Marie Sawyer, Officer Tavera, and Sergeant Laboda.  P. Br. (ECF No. 88) at
3.

district court may defer its [qualified immunity] ruling if further factual development is necessary to ascertain the availability of that defense.'" *Hutcheson*, 994 F.3d at 481 (quoting *Backe*, 691 F.3d at 648).

> First, the court determines whether the pleadings assert facts which, if true, would overcome the defense of [qualified immunity]. Second, if the pleadings assert such facts, the district court issues a narrowly tailored discovery order to uncover only those facts needed to rule on the immunity claim.

*Id.* (citations and internal quotation marks omitted).

## B

Lewis maintains that a "main focus" of the discovery she seeks is on Officer Grant's "restraining techniques of standing on [Shamond]'s back that led to [Shamond]'s death." P. Br. (ECF No. 88) at 1. She contends that "there remains an identifiable fact issue on whether [Officer] Grant was standing on Lewis during the restraint, whether there was a cover-up, and whether members of the Dallas County Sheriff's Office directed [Officer Tavera] to change his report to hide the constitutional excessive force violations that led to [Shamond]'s death." *Id.* at 4. And she alleges that

> Plaintiff's claims, as well as Tarrant County's investigation revealed that [Officer] Grant stood on [Shamond]'s back, not his legs. This is a restraint that can cause positional asphyxiation, which explains how [Shamond] was essentially dead by the time he reached the hospital. As shown in our Response, this type of restraint by standing on the back of a person is not allowed. Our medical expert will likely be able to relate the autopsy and injuries to the unlawful restraint and death.

*Id.* at 5.

- 21 -

"Before limited discovery is permitted, a plaintiff seeking to overcome [qualified immunity] must assert facts that, if true, would overcome that defense." *Hutcheson*, 994 F.3d at 481 (citing *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)). "It is not enough broadly to seek information that might impeach the defendants' version of events." *Id.* Not only has Lewis failed to plead that Officer Grant stood on Shamond's back or that his death was caused by positional asphyxiation, she has not shown how these facts, if true, would overcome Officer Grant's qualified immunity defense. This is because, even if Officer Grant *did* stand on Shamond's back, and even if Shamond *did* die as a result of positional asphyxiation, Lewis has still failed to point to any controlling authority that would have put Officer Grant on notice that standing on Shamond's back, under the circumstances of this case, constituted an objectively unreasonable use of force that violated Shamond's Fourteenth Amendment rights.[9]

Accordingly, the court denies Lewis' motion for leave to supplement the discovery record.

## VI

Officer Grant also moves for summary judgment, on qualified immunity grounds, on Lewis' bystander liability claim. Lewis has not responded to this ground of Officer Grant's motion. Although this failure does not permit the court to enter a "default" summary

---

[9]Nor does she explain how the other fact issues she identifies—whether there was a cover-up and whether members of the Dallas County Sheriff's Office directed Officer Tavera to change his report to hide the constitutional excessive force violations—even relate to Officer Grant's assertion of qualified immunity.

judgment on Lewis' bystander liability claim, *see, e.g.*, *Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  And

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2), (3).

Because Lewis has not responded to this ground of Officer Grant's motion for summary judgment with specific evidence that would raise a fact issue on the question of Officer Grant's entitlement to qualified immunity, the court grants Officer Grant's motion for summary judgment on Lewis' § 1983 claim for bystander liability.

\* \* \*

Accordingly, for the reasons explained, the court grants the Medical Providers' motion for a Rule 7 reply, directs Lewis to file a Rule 7(a) reply as to the Medical Providers within 28 days of the date this memorandum opinion and order is filed, and stays discovery as to the Medical Providers until further order of the court.  The court denies Lewis' motion for leave to supplement the summary judgment record, grants Officer Grant's motion for summary

judgment, and dismisses Lewis' action against Officer Grant by Rule 54(b) final judgment filed today.

**SO ORDERED**.

October 23, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE